SHAY ET AL. *v.* JOSEPH, RECEIVER

[No. 150, September Term, 1958.]

274

*Decided March 16, 1959.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and KEATING, J., Associate Judge of the Second Judicial Circuit, specially assigned.

*A. Frederick Taylor,* with whom were *Martin & Taylor* on the brief, for the appellants.

*J. Thomas Ellicott* and *Lewis L. Fleury,* with whom were *Daniel C. Joseph* and *James C. L. Anderson* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal by the defendants below from a judgment in favor of the appellee, awarded by a jury as damages alleged to have been sustained by appellee's woodworking company as a result of the use of an adhesive product manufactured and sold by the appellants, and which the appellee contended failed to live up to warranties made by the appellants. The appellants denied any warranty and contended that the purchase was based solely on the skill and judgment of the purchaser and as a result of the appellee's company's pretesting of the product.

The case turns upon whether there was sufficient evidence adduced by the plaintiff to submit the question of an implied warranty of the product sold by the defendants to the jury,

after the defendants had moved for a directed verdict in their favor.

Code (1957), Article 83, Section 33, in pertinent part, reads as follows:

> "Subject to the provisions of this subtitle and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

> "(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

> \* \* \*

> "(6) An express warranty or condition does not negative a warranty or condition implied under this subtitle, unless inconsistent therewith."

Little need be added in explanation of the above. The terms of the statute are clear and unambiguous and are its best expositor. In the case at bar, the sellers admit they knew the purpose for which the glue was bought; consequently, the issue narrows to the sufficiency of the evidence as to whether the purchaser relied upon the sellers' skill and judgment, with the burden of proof upon the plaintiff. 1 U. L. A. *Sales*, Section 15, note 352.

In making this determination, the evidence must be considered in the light most favorable to the plaintiff. The case consumed five days in trial and the testimony is quite voluminous. However, we shall be as brief as possible in fairly presenting the questions posed.

The appellants are co-partners who for ten years have owned and operated a small plant manufacturing glue and other adhesives at Owings Mills in Baltimore County. Shay is the chemist who prepares the products in the plant; Kelbaugh is the salesman who calls upon the trade. On July 12,

1954, Kelbaugh called on appellee's company [Eastern] in an effort to sell glue, leaving a sample of a *slow-drying* type of glue for testing, as was his normal procedure. Through the weeks and months that followed, Kelbaugh continued to call back on Eastern and received reports that the sample was still being tested. On November 22, 1954, Kelbaugh again called, this time talking to one Edmund Wilson, an engineer and purchasing agent, who inquired as to whether Kelbaugh's line included a *contact* or *quick-drying* glue. Whereupon, Kelbaugh went to his car and got a sample which he left for testing. Before leaving he took a piece of wood and a piece of plastic and demonstrated the method of applying the glue. He left this with Eastern as well as the sample of the glue. The appellant makes no claim that the glue purchased did not meet the standards of the samples, but relies entirely upon the alleged warranties.

After testing the slow-drying glue since about July 12 and the contact glue from November 22, Eastern purchased some of both from the appellants in the latter part of December, 1954. The order included ten gallons of the contact glue at a purchase price of $3.00 per gallon. The purpose for which the glue was obtained was to adhere a veneer edging such as formica to a table top or to an edging. The plaintiff contends the glue was not reasonably fit for the purpose for which it was purchased in that, on many occasions when it was used, the pieces came apart or disintegrated in about thirty days.

The only testimony that the plaintiff refers to in his brief to sustain the fact that Eastern relied upon the seller's skill and judgment in making the purchase, and not upon its own tests, is that of the witness Wilson, Eastern's production engineer, and the defendant, Kelbaugh. This testimony is quite short; so, it will be set out in full. Wilson testified that, when the question of contact glue was first mentioned, the conversation between him and Kelbaugh was as follows:

> "I said, Do you have a contact cement which can be used for applying the edge veneering?
>
> "Q. And what was Mr. Kelbaugh's reply, if any? A. He said, Yes, I think we can help you, and I will bring in a sample for you to try.

"Q. Did you in any way rely on Mr. Kelbaugh's statements? A. Yes sir."

And Kelbaugh's version of the same conversation was:

"Q. What did you tell him? A. I said that we had a contact glue.

"Q. All right. A. And I have a sample in the car I think. I will have to check. Our discussion went on before I left his office to go get the sample as to what he wanted to use this adhesive for, and I said, Mr. Wilson, I think I have something that might be of some help to you.

"Q. Did you go out and get the sample? A. I went immediately that day to the car. I carry my samples in the trunk, weather permitting."

The appellee argues that it is obvious from the above conversation that Kelbaugh selected, prescribed and furnished the contact glue for the purpose described to him by Wilson; but this overlooks all that transpired thereafter before the purchase was consummated.

Mrs. Fahey, Eastern's president, was the first witness called by the plaintiff. She testified that in the nature of Eastern's business she had had cause to test glues on many occasions; that she had kept a piece of the wood and plastic, that Kelbaugh had glued together, in her office for several weeks "to observe and see what happened"; and the "boys" had a piece out in the shop that they were "banging, trying daily to see if they could get it apart" and they soaked it in water to see if they could soak it loose. She stated that the test lasted three or four weeks and it was "in the same fashion that we had tested other products"; "[w]e ran it through a saw trying to see whether it would separate" and "we soaked a part of the sample in a bucket of water." She concluded by saying that after the tests were made she and the men in the production end of the company had a conference and "it seemed to be the answer to our particular glue problem" and "we finally agreed that it had held up for approximately three weeks and previous glues that we had tested [had] failed immediately or

within two or three days, and *we had tested this for a period of at least three weeks, so we decided to buy some.*"

Coming from a witness produced by the plaintiff and who was the president of the purchaser, this testimony is of signal significance. It states, without equivocation, that the purchase of the glue was the result of the experiments and tests made by the purchaser and not because the purchaser relied upon the skill and judgment of the seller. The above testimony of Mrs. Fahey was not denied or contradicted in the record, but, on the contrary, it was fully confirmed and corroborated by two other former employees of Eastern, also produced by the plaintiff, as well as by a third employee produced by the defendants. The only rational conclusion that can be drawn from this evidence, adduced from witnesses produced by the plaintiff, standing undenied and uncontradicted, is that the purchaser of the glue in this case did not rely upon the skill and judgment of the seller.

The appellee mildly suggests that it offered sufficient evidence of an "affirmation of fact" relating to the goods that had a "natural tendency * * * to induce the buyer to purchase the goods," so as to create an express warranty under Code (1957), Article 83, Section 30. He does not specifically state the evidence in his brief, but refers to the testimony of the defendant, Kelbaugh, on page 144 of the record extract. The only testimony there that has the slightest relevance to the question being considered is a statement made by Kelbaugh to Wilson, Eastern's production engineer, when the subject of a quick-drying adhesive was first discussed. In response to an inquiry from Wilson as to whether Kelbaugh had a quick-drying glue, Kelbaugh stated: "Mr. Wilson, I *think* I have something that *may* be of some help to you." (Italics supplied.) Whereupon, Kelbaugh went to his car and returned with the sample of glue mentioned above. It is difficult to conceive how the above language could be tortured into a construction whereby it would constitute an express warranty under the above circumstances. We are unable to conclude that a salesman, about to deliver a sample of his product for the purpose of having it tested by a prospective purchaser, who states that he thinks he has something that

may be of some help to the purchaser, has thereby given an express warranty as to the quality of the goods. Moreover, said Section 30 requires that the buyer must purchase the goods in reliance upon the express warranty. We have held above that the witnesses produced by the plaintiff conclusively established that the purchase of the glue in question was made as a result of the buyer's tests and experiments; hence, the above statement, in no event, could constitute an express warranty.

Both the appellants and appellee cited several cases, which they, respectively, claim support their contentions. As the only question here involved is one of fact as it relates to our Maryland statutes, we shall not consider nor discuss them.

From what has been said above, it is necessary that the judgment be reversed.

*Judgment reversed, with costs.*