HACKER et al. v. SHOFER and SMELKIN-
SON, Administrators

[No. 418, September Term, 1967.]

*Decided December 9, 1968.*

The cause was argued before HAMMOND, C. J., and McWIL-
LIAMS, FINAN, SINGLEY and SMITH, JJ.

*Johnson Bowie,* with whom was *Randolph N. Blair* on the
brief, for appellants.

No brief filed on behalf of appellees.

SMITH, J., delivered the opinion of the Court.

On or about June 6, 1962, Robert L. Hacker, then age 13, was riding his bicycle on the concrete shoulder of the Baltimore Beltway. It is claimed that suddenly, without explanation or warning, the front fender engaged the front tire and locked it, throwing young Hacker over the handle bars onto the concrete shoulder with the bicycle coming to rest on top of him. It is conceded that he suffered substantial personal injury.

Suit was brought against the seller of the bicycle in the Superior Court of Baltimore City by young Hacker's father on behalf of the son and also on his own behalf for medical expenses. The vendor's personal representative was later substituted.

The case was tried without a jury. At the end of the case the trial judge entered a verdict on behalf of the defendant, holding that the plaintiff had not met the burden of proof.

The bicycle in question was bought approximately nine weeks before the accident. It had an odometer on it. It had been ridden 84 miles when the accident took place.

In this Court Hacker relies on the implied warranty of the Uniform Sales Act then in force in Maryland, Code (1957) Art. 83, § 33 which provided an implied warranty of quality from the seller to the buyer if the buyer made known to the seller the particular purpose for which the goods were required and it appeared that the buyer relied on the seller's skill or judgment. The suit was based, however, on negligence as well as warranty, claiming negligence in the assembly of the bicycle.

No explanation is presented in the evidence as to the actual cause of the fender's bending forward. Hacker's evidence consisted of testimony of the motorist who saw young Hacker after the accident, of young Hacker and of the father. The motorist shed no light on the happening of the accident. The boy's testimony primarily related to the actual happening of the accident and the injuries related thereto, without describing what caused the accident. He testified that the speedometer would not work when the bicycle was acquired. His father repaired that after which it worked satisfactorily. The bicycle was assembled when acquired by Hacker. A pertinent portion of the testimony of Robert L. Hacker is as follows:

"Q. And therefore the mileage on the bicycle is about right? A. It is exactly other than maybe a tenth of a mile off from the first time I rode it.

Q. And it has 84 miles on it? A. Yes sir.

Q. Do you have any idea how fast you were going just before you fell? A. I just looked down, because I had just started to slow down, and it was about 10 or 12 miles an hour.

Q. And you hadn't seen anything wrong with the fender prior to this? A. I had no reason to look; no sir.

Q. And the bike had never been repaired other than that repair to it that you say was to the speedometer? A. No sir, nothing else had been done to it.

Q. And you had no complaint, never advised Mr. Shofer that there was anything wrong with the bike? A. No sir, nothing had happened."

The father indicated that he had, in fact, "tightened up the lower part of the speedometer because it was not registering". The only part of his testimony that might be said to reflect on the actual happening of the accident is as follows:

"Q. Did you examine the bicycle after the—A. Yes, I looked at it very thoroughly because I was trying to determine what caused it. Someone said it might have been a blow out but the tire was full of air at the time.

Q. Did you turn the wheel? You could not turn the wheel? A. No, it was locked solid.

* * *

Q. But the wheel could not be turned? A. It could not be turned. It could not be moved.

Q. Was any damage or any marks on the bike? A. Robert was very careful, he had his other bikes before and he had a bit of a problem and we cautioned him about it, that this was his birthday present and because of summer coming on and

summer camp, we let him ride a little bit. There was not a scratch on it to my knowledge."

The general manager of the vendor stated he had been with the vendor for more than 30 years. He testified as to the inspection procedures before a bicycle left the store. He said although they did not check the speedometer, otherwise bikes were checked fully before going out. The bicycle was in the trial court. He testified that from his observation, although the fender on the bicycle was "curled all the way up the back", the braces remained bolted to the fender. He further testified that this meant to him that prior to the accident the fender was still in place and being held by the rod. He was then asked,

"* * * If the condition of the bike occurred from something related to the assembly of the bike, would it have been visible earlier?"

He replied:

"The only thing possible that could have done that would have been the fender. And he couldn't have covered 86 miles, it would have shown up right at the beginning."

The trial court said:

"It seems to me, whether you rely on warranty or negligence, that this is not a situation where res ipsa loquitur may apply where you can merely say 'we had this article; we were using it and we were injured,' and offer no explanation of how the injury occurred with reference to the construction or the components of the article.

* * *

"The evidence is that the speed of the vehicle and the weight of the person on it caused the fender to be bent forward so that the tip of the fender engaged the tire and that the tire then picked up the corner of the fender which was then in contact with the tire for the first time; not during the preceding eighty-six miles, but only at that instant did it come in con-

tact with the tire and then roll up in the fashion that is exhibited."

Insofar as the negligence aspect of the suit is concerned the doctrine of *res ipsa loquitur* could not apply since the apparatus causing the injury was not in the control of defendant at the time of the injury. *Smith v. Kelly,* 246 Md. 640, 644, 229 A. 2d 79 (1967); *Munzert v. American Stores Co.,* 232 Md. 97, 104, 192 A. 2d 59 (1963).

In *Great Atl. and Pac. Tea Co. v. Adams,* 213 Md. 521, 132 A. 2d 484 (1957) suit was brought for breach of implied warranty in the sale of food. We there said:

"The fact that this action is for the breach of an implied warranty does not relieve the appellee from the burden of proving such breach. * * *

"The doctrine of *res ipsa loquitur* has no application in this case. It may not be invoked to show that the organism was on the lettuce at the time of the sale. *Ellin* case, *supra* [*Cloverland Farms Dairy v. Ellin,* 195 Md. 663, 75 A. 2d 116 (1950)]; *Leasure* case, *supra,* [*Armour & Co. v. Leasure,* 177 Md. 393, 9 A. 2d 572 (1939)].

"In the instant case it is clear from the evidence produced by the plaintiff himself that the contamination of the lettuce might have occurred either before or after it left the appellant's store. In *Todd v. Ferrell,* 212 Md. 574, 584, Chief Judge Brune speaking for this Court, said 'However, in any action for damages the court is not justified in inferring negligence merely from possibilities. A mere surmise that there may have been negligence on the part of the Defendant will not justify the court in submitting the case to the jury.'

"In an action on an express warranty it is incumbent on the plaintiff to prove the unsoundness of the article at the time of the sale. *McCeney v. Duvall,* 21 Md. 166; *Fenwick v. Forrest,* 5 Harris & J. 414. It is undoubtedly the settled law that to recover on an express warranty the burden of proof is on the plaintiff to establish that the article sold did not at the time

of sale conform to the representations of the warranty. This rule of law applies with equal force to an implied warranty.

"The same principles as to proof apply whether the plaintiff is attempting to prove negligence or to prove the breach of an implied warranty." *Id.* at 525-527.

For requirements as to proof of existence of an implied warranty under the Uniform Sales Act, see *Shay v. Joseph,* 219 Md. 273, 149 A. 2d 3 (1959).

The accident in this case arose either from a defect in the bicycle present at the time of sale, or from a negligent infliction of damage to the bicycle subsequent to its purchase. There was no evidence before the Court as to the origin of the defect in the bicycle. We cannot presume as to its origin. Accordingly, the plaintiff failed to meet the burden of proof imposed by law.

<div align="right">

*Judgment affirmed, costs to be paid
by appellants.*