JOSEPH UNDECK ET UX. *v.* CONSUMER'S DISCOUNT SUPERMARKET, INC. ET AL.

[No. 44, September Term, 1975.]

*Decided December 30, 1975.*

The cause was argued before ORTH, C. J., and POWERS and MOORE, JJ.

*Martin S. Protas*, with whom were *Harry Protas, Robert L. Kay, Jordan M. Spivok* and *Protas, Kay, Spivok & Protas* on the brief, for appellants.

*Michael P. Chervenak*, with whom was *Francis J. Ford* on the brief, for appellee Consumer's Discount Supermarket, Inc. *Francis X. Quinn* for other appellee.

POWERS, J., delivered the opinion of the Court.

In this products liability case the efforts of Joan Undeck and her husband to win damages in the Circuit Court for Montgomery County were frustrated when the trial judge directed verdicts in favor of the two defendants at the close of the plaintiffs' evidence on the issue of liability. This appeal is from the judgments entered on those verdicts.

Mrs. Undeck, joined by Joseph Undeck, her husband, sued Consumer's Discount Supermarket, Inc. and Sterling Drug, Inc. The second amended declaration alleged that Sterling Drug, Inc. manufactured and distributed a disinfectant-cleaner known as Lysol, and that Consumer's Discount Supermarket, Inc. operated a retail grocery where it offered Lysol for sale. Alleging that Mrs. Undeck purchased a bottle of Lysol, packaged in a cardboard container, and was injured when the bottle fell from its package and shattered on the floor of the supermarket, the Undecks claimed damage against both defendants in one

count based upon breach of warranty and in another count based upon negligence. In a third count both claimed damages for detriment to their marital relationship.

At the trial, held before a jury and Judge John F. McAuliffe in the Circuit Court for Montgomery County on 14 January 1975, the evidence consisted solely of the testimony of the plaintiffs. When a problem arose in scheduling the testimony of a medical witness, consideration was given to bifurcating the trial, but no decision was reached. Instead, it was agreed that since the only additional evidence would relate to damages, the court should entertain at that time motions of the defendants for directed verdicts on the question of liability. The motions were made and argued. Both were granted.

In considering the motions it was the duty of the trial judge, with respect to any issue, to look upon all credible evidence, together with all inferences fairly deducible therefrom, in a light most favorable to the parties against whom the motions were made, and to determine whether the whole rose above the level of speculation, conjecture, or mere possibility, and was sufficient to require submission of the issue to the jury. *Plitt v. Greenberg*, 242 Md. 359, 367-68, 219 A. 2d 237 (1966); *Buchanan v. Galliher*, 11 Md. App. 83, 87-88, 272 A. 2d 814 (1971).

We summarize, and to some extent paraphrase, Judge McAuliffe's oral ruling on the motions:

> There is no evidence of record to involve the defendant Sterling Drug, Inc. in any manner in this case, and the motion must be granted as to that defendant. Even if that were not so, there is no sufficient evidence of negligence by the manufacturer, and no evidence that any applicable warranty was not met at the time the article left the control of the supplier and passed into the control of the retailer.
>
> The evidence is not sufficient to identify the defendant Consumer's Discount Supermarket, Inc. as the retailer. The only portion of the plaintiff's

testimony which dealt with the identification of the store was her statement that she was "In the Co-op on Georgia Avenue, Wheaton, Maryland." There was no proof that the store was in any manner owned or leased or controlled by Consumer's Discount Supermarket, Inc., a corporation, or, in fact, that such corporation ever existed.[1]

Even if the problem of identity had been surmounted the motion would have to be granted as to this defendant as well.

The evidence does not permit the plaintiffs to invoke the doctrine of res ipsa loquitur to show negligence. The seller's implied warranty does not extend to the container.

Appellants contend on appeal that the evidence established a prima facie case of identity of Consumer's Discount Supermarket, Inc.; that a product label offered in evidence but not admitted would prove the identity of the manufacturer of the product; that the evidence established a prima facie case of negligence; and that the statutory implied warranty extends to product packaging.

## Identification of the Manufacturer

We readily affirm the judgment in favor of appellee Sterling Drug, Inc. There was no reference whatever in the evidence to that party by any name, correct or incorrect, and indeed no reference to any person or entity as manufacturer or distributor of the product. For all the evidence tells us, the "Co-op" may have concocted the preparation on its own premises. As the trial judge commented:

"That it may have been the subject of proof by way of reading into the record Answers to Interrogatories or by way of pretrial motion or

---

1. Proof of its existence was not required. It was alleged in the declaration, and there was no special plea denying the allegation. Maryland Rule 342, § c 1 (i) and § c 2 (d).

request for admission of facts, is not now before me. I pass only on the evidence of record." [2]

It is argued here that the evidence would have been sufficient to prove that Sterling Drug, Inc. manufactured Lysol, had not the trial judge erred in refusing to admit in evidence several boxes or cartons which were marked for identification, but were not admitted in evidence. They were described as boxes of Lysol purchased months later, either at the same store or elsewhere. At least some of them were offered as tending "to prove a course of conduct", presumably because the cartons appeared "to be opened at the top and sliced in various ways". Objections to their admission in evidence were sustained.

Although the transcript and the exhibit list show that they were marked for identification, the cartons were not included in the record sent to this Court. [3] The exhibits were not offered to show the name of the manufacturer. We can only guess that a manufacturer's name might have been shown on the carton. The rulings on the admissibility of the exhibits, as offered, were correct.

### Identification of the Retailer

Whether there was evidence sufficient to show, or permit a rational inference, that the other defendant named in the pleadings, Consumer's Discount Supermarket, Inc., was the retailer involved in the described transaction, is a more difficult question.

In arriving at the answer we must keep in mind that the question is not whether a sale was made to Mrs. Undeck. The evidence was clearly sufficient to show that there was a sale, *Sheeskin v. Giant Food, Inc.*, 20 Md. App. 611, 626, 318 A. 2d 874 (1974), *aff'd., Giant Food, Inc. v. Wash. Coca-Cola,*

---

2. No interrogatories were propounded to either defendant. Maryland Rule 417. No request to admit any matters of fact was filed. Maryland Rule 421. The plaintiffs took no depositions. Maryland Rule 401 et seq. In short, the plaintiffs employed no discovery procedures.

3. Had there been an omission of any part of the record which a party wished this Court to review, the omission could have been supplied upon motion under Maryland Rule 1027.

273 Md. 592, 332 A. 2d 1 (1975), and that the "store" was the seller. The question is, who was the "store" ? The amended declaration alleged that the seller was Consumer's Discount Supermarket, Inc. Each of that defendant's pleas was a general denial. Pleadings are not evidence. We must look to the evidence to find the answer.

The only words used by Mrs. Undeck to name the store were, as the trial judge observed, "the Co-op". Appellants now contend that other evidence identified the store by name. They find it in two questions put to her, and say that her answers adopted counsel's factual assumptions, and made them evidence. The first, after Mrs. Undeck had testified that she purchased Lysol again the next year, was:

"Q Did you purchase any from the Consumers Discount store that you were at in September 1971 where your accident occurred? "

and she answered:

"A This one was and I think there is another one."

Later the record shows this question by her counsel, and her answer:

"Q Returning to the date of September 10, 1971, and the Consumers Discount Supermarket, when you removed the bottle of Lysol from the shelf, as you stated you did, can you describe the display of Lysol products at that time on that shelf on that day?
"A No, I couldn't."

The name, "the Co-op" used by Mrs. Undeck suggests no association whatever with the corporate defendant. The two questions by her counsel which we have quoted above, each in a different degree, may or may not suggest some identification with the corporate defendant. A difficulty with questions of this kind is that they are objectionable, either as leading or as argumentative, at least to the extent that they include or incorporate by assumption a fact not

otherwise proved. 3 Wigmore, *Evidence,* § 771 (Chadbourn rev. 1970) says that this type of question:

"* * * may lead a witness to reply without taking care to specify that his answer is based on that assumption, and may thus commit him to an assertion of the assumed fact, though in fact he may not desire or be able to do so."

McCormick, *Evidence* (1972 ed.), § 7, characterizes this kind of question not as leading but as argumentative, and objectionable for that reason.

No objections were made, however, to the questions which we have set out above from the transcript in this case. Therefore, they are in the case for whatever probative value they may have, *Old v. Cooney Detective Agency,* 215 Md. 517, 526, 138 A. 2d 889 (1958), and to the extent that the answers of the witness adopted as facts the assumptions stated in the questions, those facts are in evidence. We think it is rational to infer that the answer of the witness to the first of the two questions we have quoted above did adopt the facts assumed in the question. The actual question was asked in the first four words, "Did you purchase any * * *", and all of the rest, "* * * from the Consumer's Discount store that you were at in September 1971 where your accident occurred?" was, it is true, supplied by the questioner. But from the sequential arrangement of the question and the assumption, as well as from the responsive nature of the answer, we think that Mrs. Undeck could properly be understood as saying that it was at the Consumer's Discount store in September, 1971, where her accident occurred.

In the second of the two questions and answers we have quoted above, the effect is reversed. The only real inquisitorial part of the question is the very last part, "* * * can you describe the display of Lysol products at that time on that shelf on that day?", to which the witness gave a negative response. The fact-supplying portion of the question was the first part, and may well have been subordinate in the mind of the witness when she answered,

in effect, that she could not describe the display. Her answer neither adopts nor rejects her questioner's assumption. Presumably, the answer would be the same, with or without a name for the place where she saw the display. The effect is well expressed in McCormick, *Evidence* (1972 ed.), § 7, where the author says:

> "Oftentimes, the question will be so separate from the assumption that if the witness answers the question without mentioning the assumption, it is impossible to ascertain whether he ignored the assumption or affirmed it."

From this analysis of the evidence, we conclude that the view of it most favorable to the plaintiffs is that Mrs. Undeck made her purchase of Lysol at "the Consumer's Discount store". The question now is whether that degree of identification in the evidence is sufficient to permit a jury to find that the seller was the defendant Consumer's Discount Supermarket, Inc.

The Court of Appeals held that a plaintiff's evidence was not sufficient to identify by name the defendants being sued, in *Vernon v. Aubinoe*, 259 Md. 159, 269 A. 2d 620 (1970). There the plaintiff sued three individuals as owners of the property upon which she fell because of a defect in the surface, and sustained injuries. There were several references in the testimony to "The Aubinoe Company", "the Aubinoe people", a "resident manager", and to "the construction man", as well as a reference to "the construction department of Alvin L. Aubinoe, Inc." The trial court granted a defense motion for a directed verdict at the close of the plaintiff's evidence. The Court of Appeals reviewed the evidence and held, at 165:

> "The evidence presented falls far short of establishing ownership or control of the premises by any of the defendants."

*Greene v. De La Salle College*, 237 Md. 615, 205 A. 2d 395 (1964), was a similar case, and reached a similar result, but there the failure of proof had nothing to do with the

sufficiency of the identification of the landowner by name. The case turned on the failure of the evidence to show whether the location of the alleged defect was inside or outside the boundary between the public street and the land owned by De La Salle College.

We know of no other civil cases [4] in Maryland which are analogous, and there is little authority elsewhere. See Annot., 51 A.L.R.3d 1344 (1973). Three decisions of the Supreme Judicial Court of Massachusetts illustrate what we conclude is the common sense rule.

In *Herman v. Fine*, 314 Mass. 67, 49 N.E.2d 597 (1943), the question was whether the Jacob Fine being sued was the same Jacob Fine against whom a judgment had been entered in another case. The court said that, " 'bald identity of name without confirmatory facts or circumstances' seems never to have been considered quite sufficient to prove identity of person." It said that very slight evidence might be enough, but something more than identity of names was necessary. Some years earlier the same court had held, in *Weiner v. D. A. Schulte, Inc.*, 275 Mass. 379, 176 N. E. 114 (1931), that testimony of a witness that a cigar counter was run by "Schulte, Inc." was enough to permit the jury to infer that the witness meant "D. A. Schulte, Inc.", the defendant.

The Massachusetts court again considered the name identity question in *Nugent v. Popular Markets, Inc.*, 353 Mass. 45, 228 N.E.2d 91 (1967). It reversed the ruling of the Appellate Division, which had ruled that the evidence provided no more than a bald identity of names, and, under *Herman v. Fine, supra,* was not enough. The defendant named in the suit was Popular Markets, Inc. The plaintiff had testified that he purchased food at "the Popular Market, where he usually shopped for groceries, in the Sixteen Acres shopping center in Springfield". In a notice letter sent by plaintiff's counsel to the defendant, by its full corporate

---

4. In a criminal case, Sallie v. State, 24 Md. App. 468, 332 A. 2d 316 (1975), we held that along with other circumstances shown by the evidence, identification of the defendant by name was enough. We cited and quoted from 1 Wharton's Criminal Evidence, § 103 (Torcia 13th ed. 1972) where it was said, "Identity, then, can be presumed from names coupled with other circumstances".

name, and received in evidence, the Supreme Judicial Court found something more than bald identity. The court also pointed to the unlikelihood, and possible illegality, of there being two separate businesses in the same locality with names so similar.

We hold that the rule is that in proving the identity of an individual party in a case, something more than bald identity of names is required; and that in proving the identity of a corporate or other business entity which is a party in a case, something less than precise identity of names may be sufficient.

In expressing this rule we reemphasize that precision in the proof of names of parties involved in litigation is highly important, especially because such proof is ordinarily easy to obtain and simple to produce, and because failure to produce it may prevent the decision of a case on its merits. We shall proceed to consider the merits of the case before us only because we are willing to say that the evidence in this case that it was the defendant Consumer's Discount Supermarket, Inc. which sold the Lysol to Mrs. Undeck amounted to one gossamer greater than a scintilla.[5]

### Sufficiency of the Evidence
### to Show Negligence

Appellants make no claim that the evidence shows any negligence, other than that which they say may be inferred, by the exercise in logic which we sometimes refer to as res ipsa loquitur.

We refer to *Joffre v. Canada Dry, Inc.*, 222 Md. 1, 158 A. 2d 631 (1960); *Leikach v. Royal Crown*, 261 Md. 541, 276 A. 2d 81 (1971); *Sheeskin v. Giant Food, Inc.*, 20 Md. App. 611, 318 A. 2d 874 (1974); and *Giant Food, Inc. v. Wash. Coca-Cola*, 273 Md. 592, 332 A. 2d 1 (1975). In those cases the

---

5. In Turner v. Hammond, 270 Md. 41, 310 A. 2d 543 (1973), Judge McWilliams said for the Court of Appeals, at 60:

"All definitions of scintilla, at least in this context, are imprecise but if we assume it takes ten gossamers to make a scintilla then the appellees' evidence before the Board falls well short of five gossamers."

Court thoroughly reviewed the applicable authorities, with particular consideration in the latter three opinions of the "exclusive control" criterion of res ipsa loquitur. That requirement was held to be met by proof "that there is a greater likelihood that injury was caused by defendant's negligence than by some other cause", *Leikach*, 261 Md. at 550, quoted in *Sheeskin*, 20 Md. App. at 616.

In the *Leikach* and *Giant Food* cases there was extensive and detailed evidence relating to the manufacture, delivery, custody, and control of the offending product. It was not questioned in either of those cases that the misadventure with the product resulted from a defect, and proximately caused the plaintiff's injuries. In the case before us, the evidence begins with the sale to Mrs. Undeck, and, if anything, shows that there was no discernable defect at that time. There was no evidence that at any time, before or after the sale, there was a latent defect. In short, there was a total lack of any evidence to show negligence, or from which negligence could be inferred.

The trial judge was correct when he said that there was no evidence sufficient to permit the jury to find that Consumer's Discount Supermarket, Inc. was negligent with respect to the bottle of Lysol sold to Mrs. Undeck.

### Sufficiency of the Evidence to Show Breach of Warranty

The evidence indicates that the product Mrs. Undeck purchased was a liquid. The liquid was contained in a glass bottle. The glass bottle was contained in a cardboard carton or box. The trial court expressed the view that the statutory implied warranty did not extend to the carton. We find it unnecessary to rule on that question in this case.[6]

Breach of warranty, like negligence, must be proved. The need for proof was discussed by Judge Levine for the Court of Appeals in *Giant Food, Inc. v. Wash. Coca-Cola, supra,* at

---

**6.** See Sheeskin, *supra,* 20 Md. App. at 629, footnote 6, where we commented on the applicability of the warranty to a bottle containing a carbonated drink. We did not consider there the paper carton which contained the bottles which contained the liquid.

608-09. While he was discussing the warranty of the manufacturer, not the retailer, the principles are the same. He said:

> "That the plaintiff in a breach of warranty action must prove that the article sold did not at the time of sale conform to the representations of the warranty is not open to question, *Hacker v. Shofer*, 251 Md. 672, 248 A. 2d 351 (1968); *Great Atlantic, Etc., Co. v. Adams*, 213 Md. 521, 132 A. 2d 484 (1957). Maryland is not alone in this view. *Butterfield v. Pepsi-Cola Bottling Co. of Wichita*, 210 Kan. 123, 499 P. 2d 539, 542 (1972); *Lucchesi v. H. C. Bohack Co., Inc., supra*, 8 UCC Rept. Serv. at 329; *Cooper v. Mason*, 14 N.C.App. 472, 188 S.E.2d 653 (1972). In *Butterfield*, heavily relied upon here by the customer, the court quoted from a prior decision:

>> ' " Only recently we had occasion to point out that irrespective of the theory of recovery — negligence or implied warranty — a prerequisite to recovery against a manufacturer for a defective product is that the plaintiff must show the product was defective at the time it left the manufacturer's control. . . .

>> \* \* \*

>> ' " . . . Thus, it may be said as a general rule that there must be evidence from which it may reasonably be inferred that the defect existed at the time the product left the possession or control of the *party sought to be held liable*." ' 499 P. 2d at 542 (emphasis added).

> "The particular problem presented here, therefore, is whether the customer has presented sufficient evidence of a defect in the bottles at the time of delivery to the retailer to warrant submission of his case to the jury. Although he was

referring to strict liability, what Dean Prosser said is instructive:

'Strict liability [or warranty] eliminates both privity and negligence; but it still does not prove the plaintiff's case. He still has the burden of establishing that the particular defendant has sold a product which he should not have sold, and that it has caused his injury. . . . The mere possibility that this may have occurred is not enough, and there must be evidence from which the jury may reasonably conclude that it is more probable than not. . . .

'The plaintiff must prove . . . that he was injured because the product was defective, or otherwise unsafe for his use. . . .

'Further, the plaintiff must prove that the defect was in the product when it was sold by the particular defendant. When on the evidence it is equally likely that it developed after the product left his hands, . . . no liability is established on the part of any previous seller.

\* \* \*

'The bare fact that an accident happens to a product . . . is usually not sufficient proof that it was in any way defective. . . . On the other hand, the addition of very little more in the way of other facts, . . . may be enough to support the inference. . . .' Prosser, *The Fall of the Citadel*, 50 Minn. L. Rev. 791, 840-44 (1966).

"In short, then, to allow the jury to decide whether there was a breach of the warranty, there must be some evidence beyond mere speculation which would enable the jury to rationally decide it is more probable than not that the defect existed at the time of sale, which in this case, would have

been when the bottles were delivered to the retailer. Here, there was no such evidence. As with the proof of negligence in the context of *res ipsa loquitur*, the evidence presented here fails to establish a defect in the bottle when it was delivered to the retailer, but indicates a greater likelihood that at the moment of such delivery, there was no defect."

There was no evidence from which the jury could have found that Consumer's Discount Supermarket, Inc. breached any warranty that it made to Mrs. Undeck. The motion for a directed verdict was properly granted.

*Judgments affirmed.*
*Appellants to pay costs.*