898 F.2d 146
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Linda LEE, Plaintiff-Appellant,
v.
BAXTER HEALTH CARE CORPORATION, Defendant-Appellee,
and
Surgitek, Inc.; Mentor Corporation; American Hospital
Supply, Defendants.
 No. 89-2143.
 United States Court of Appeals, Fourth Circuit.
 Argued: Jan. 12, 1990.
Decided: Feb. 27, 1990.
 
 Appeal from the United States District Court for the District of Maryland at Baltimore. Norman P. Ramsey, District Court Judge. (CA-88-1411-R)
 Thomas Patrick Ryan, McCarthy, Wilson & Ethridge, Rockville, Maryland, for appellant.
 Linda S. Woolf, Goodell, Devries, Leech & Gray, Baltimore, Maryland, for appellee.
 D.Md., 721 F.Supp. 89.
 AFFIRMED.
 Before ERVIN, Chief Judge, and MURNAGHAN and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Linda Lee ("Lee") brought this action against Baxter Healthcare Corporation ("Baxter"), seeking recovery for personal injuries sustained by her as a result of a ruptured breast prosthesis purportedly manufactured by Baxter. The plea for relief was based on theories of strict liability, negligence and breach of warranty. The district court granted Baxter's motion for summary judgment, finding that: (1) there was no genuine issue of material fact; (2) Lee failed to identify Baxter as the manufacturer of the ruptured prosthesis; (3) the product warning at issue in this case was legally adequate; (4) no evidence of a product defect was offered; and (5) the statute of limitations had expired on the warranty claim. Lee now appeals that decision, focusing this court's attention primarily on the adequacy of the product warning. In response, Baxter claims that this appeal is frivolous because Lee, in her opening brief, did not expressly challenge any of the other independent grounds supporting the district court's grant of summary judgment in Baxter's favor. For this reason, Baxter seeks costs or double costs, attorney's fees and other sanctions. Because Lee has failed to establish two critical elements of her case--that Baxter was the manufacturer of the breast implant and that the disputed product warning was insufficient as a matter of law--the decision of the district court is hereby affirmed. We decline, however, to grant Baxter's request for costs and fees.
 
 I.
 
 2
 The facts of this case are not disputed by the parties. In late 1975 Lee consulted Dr. Bahman Teimourian ("Dr. Teimourian") regarding breast augmentation. On March 3, 1976, after two consultations, Lee underwent breast implant surgery at Suburban Hospital in Montgomery, Maryland. For more than nine years, Lee experienced no difficulties and expressed no complaints with her silicone-filled implants. Then, in November of 1985, Lee detected small nodules in her left breast. Despite the advice of friends and physicians, Lee refused to submit to a biopsy or mammography until August of 1986. At that time, a mammogram revealed that Lee's left prosthesis had ruptured. On September 26, 1986, Lee was examined by Dr. Teimourian, who recommended that both implants be removed and replaced. Consequently, Lee underwent breast explant surgery on October 14, 1986. The surgery confirmed that the left implant had ruptured, and also showed that silicone had leaked out of the prosthesis and invaded the surrounding tissue. In addition, Dr. Teimourian discovered that the right implant had also ruptured and was slowly leaking. Because of the leaks, Dr. Teimourian had to remove the affected breast tissue, and insert larger prostheses to compensate for the lost tissue. Thus, the original 185cc implants were replaced by 340cc implants. Lee maintains that she suffered personal injuries caused by the rupture and replacement of her breast implants.
 
 
 3
 On February 25, 1988, Lee filed a complaint sounding in tort against Surgitek, Inc. ("Surgitek") and Mentor Corporation ("Mentor") in the Circuit Court for Montgomery County, Maryland. On May 16, 1988, this suit was removed to the United States District Court for the District of Maryland pursuant to 28 U.S.C. Sec. 1441(a). On September 14, 1988, Lee filed an amended complaint adding American Hospital Supply Corporation ("American") and Baxter as defendants. On motion of the parties, the trial court subsequently dismissed without prejudice three of the four defendants--Surgitek and American on October 28, 1988, and Mentor on December 27, 1988. The dismissals left Baxter as the sole remaining defendant on charges of negligence, strict liability and breach of warranty.
 
 
 4
 Baxter became involved in this suit through a somewhat circuitous route. Dr. Teimourian recalls that he probably obtained the ruptured prostheses from one of several manufacturers, including Surgitek and Heyer-Schulte Corporation ("Heyer-Schulte"). Until December 16, 1982, Heyer-Schulte was a wholly owned subsidiary of American. On that date, Heyer-Schulte merged into American and became a division of American. On March 30, 1984, American sold its breast prosthesis manufacturing division to Mentor. As part of the sale, American agreed to indemnify Mentor for any liability arising from any breast prosthesis which had been manufactured and sold by Heyer-Schulte. Thereafter, on November 25, 1985, American was acquired by Baxter Travenol Laboratories, Inc. ("Travenol"). At first, American was operated as a wholly owned subsidiary of Travenol. On December 31, 1986, however, American was merged into Travenol. The surviving corporation now operates as Baxter. Thus, Baxter is the successor-indemnitor to the indemnity agreement originally executed by American and Mentor.
 
 
 5
 On May 15, 1989, Baxter filed a motion for summary judgment in its favor on all three counts of the complaint. The motion was granted by the district court on June 23, 1988, and this appeal followed.
 
 II.
 
 6
 Summary judgments are appropriate in those cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). In other words, summary judgments should be granted in cases "where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir.1950); see also Charbonnages De France v. Smith, 597 F.2d 406, 414 (4th Cir.1979). A moving party is also entitled to summary judgment if the nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such cases, there can be no genuine issue as to a material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. Id. at 322-23. Moreover, summary judgments are reviewed de novo on appeal. Higgins v. E.I. DuPont De Nemours & Co., 863 F.2d 1162, 1166-67 (4th Cir.1988).
 
 III.
 
 7
 In diversity cases, a federal district court must apply the conflict of law rules of the forum state. Klaxton Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 494, 496 (1941); Sokolowski v. Flanzer, 769 F.2d 975, 977 (4th Cir.1985). In this case, Maryland is the forum state. In tort actions, Maryland courts apply the doctrine of lex loci delecti, so that the substantive law of the state where the wrong occurs governs. Rockstroh v. A.H. Robins Co., Inc., 602 F.Supp. 1259, 1262 (D.Md.1985) (construing Maryland law); Hauch v. Connor, 295 Md. 120, 453 A.2d 1207, 1209 (1983). In the present case, the alleged wrongdoing occurred in Maryland. Thus, Maryland law controls all issues of tort raised by this appeal.
 
 IV.
 
 8
 Under Maryland law, there are two essential elements of proof in any products liability case: (1) the plaintiff must properly identify the product causing the harm; and (2) the plaintiff must show that a defect in the product was the cause of the injury. In the case at bar, Lee failed to establish that the ruptured prostheses were manufactured by Heyer-Schulte, or that the breast implants were in any way defective. Consequently, Lee has failed to prove two necessary elements of her case for which she has the burden of going forward. The lack of proof on either one of these two requirements supports the grant of summary judgment in Baxter's favor.
 
 
 9
 As required under the first element of proof, a products liability plaintiff must establish that the defendant is somehow liable for the injury caused by the challenged product. For example, if recovery is sought from a manufacturer or distributor, as it is in this case, the plaintiff must prove that the defendant actually was the manufacturer or distributor of the product which purportedly caused the plaintiff's injury. See Undeck v. Consumer's Discount Supermarket, Inc., 29 Md.App. 444, 349 A.2d 635, 637 (1975); 63 Am.Jr.2d Products Liability Sec. 164 & n. 69 (1984). Although the identity of a manufacturer or distributor of a product is ordinarily well-known, not often disputed, and rarely litigated, the matter of identification remains a crucial component in every products liability action. See, e.g., Celotex, 477 U.S. at 319-20 (1986) (holding that a manufacturer is entitled to summary judgment when no evidence is presented to show that the manufacturer's product was the proximate cause of the plaintiff's injuries).
 
 
 10
 In this case, Lee has offered no evidence, and discovery by the parties has revealed none, to show that Heyer-Schulte did in fact manufacture the ruptured breast implants. Most significantly, Lee's medical records do not identify the manufacturer of her prostheses. At oral argument, Baxter's counsel related that the routine procedure following most breast implantations was for the surgical personnel to affix the manufacturer's product labels, which accompany the prostheses, to the patient's medical records. Apparently, this simple procedure was not followed in this case. In addition, Dr. Teimourian could not recall with certainty the brand of implant which he used in Lee's breast augmentation. During his deposition, moreover, Dr. Teimourian stated that, at the time of Lee's breast implantation, he had used prostheses produced by several manufacturers, including those made and sold by Surgitek and Heyer-Schulte. Furthermore, Edward Seder, a former Director of Quality Assurance at Heyer-Schulte, testified at his deposition that the configuration of the ruptured prostheses, which Dr. Teimourian had retained for purposes of identification, were unlike anything he had ever seen produced by Heyer-Schulte. Lee's only attempt to demonstrate that Heyer-Schulte was the manufacturer of the implants was to name an expert witness who, according to Lee, would be able to identify Heyer-Schulte as the producer of the ruptured implants.
 
 
 11
 In an attempt to sidestep the identification problem, Lee urges that this court, notwithstanding Maryland tort law to the contrary, find Baxter liable under the "market share liability" theory fashioned by the California Supreme Court in Sindell v. Abbott Laboratories, 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (1980), cert. denied, 449 U.S. 912 (1981). Under this legal theory, products liability may be imposed upon any one or more producers of a given type of product in proportion to the market share controlled by them, regardless of the plaintiff's inability to identify the actual manufacturer of the defective product. Other states have imposed comparable liability under theories denoted "concert of activity," "alternative liability," and "enterprise liability." See 63 Am.Jur.2d Products Liability Sec. 167 (1984). These theories, however, directly contravene Maryland tort law, which requires direct proof that the defendant is liable for the plaintiff's injuries because the defendant manufactured, distributed, sold, or was otherwise responsible for or controlled the product. See Undeck, 349 A.2d at 637. As an additional consideration, because Lee has failed to show that any defect existed in the ruptured implants, she is unable to recover even under a market share liability theory, which presupposes the existence of a defective product of unknown origin. Accordingly, we refuse to adopt such an innovative and far-reaching theory of recovery.
 
 V.
 
 12
 As required under the second element of proof, a plaintiff must demonstrate that the challenged product was truly defective in some manner, and that the defect caused or contributed to the plaintiff's injuries. See Undeck, 349 A.2d at 641; 63 Am.Jur.2d Products Liability Sec. 224 & n. 92 (1984). Under the applicable law in Maryland, a product may be defective for any one of three reasons: (1) a flaw existed in the product at the time of sale, making the product more dangerous than intended by the manufacturer; (2) the manufacturer failed to warn adequately of a known risk of hazard stemming from the product's design; or (3) the product was defectively designed. Simpson v. Standard Container Co., 72 Md.App. 199, 527 A.2d 1337, 1339-40, cert. denied, 311 Md. 286, 533 A.2d 1308 (1987). In this case, Lee has attempted to demonstrate that her prostheses were defective because the product warning provided by Heyer-Schulte was legally inadequate.
 
 
 13
 At the time Lee received her breast implants in 1976, Heyer-Schulte enclosed a product insert sheet with its mammary prostheses which contained the following warning:
 
 
 14
 CAUTION: The silicone rubber envelope of these products has a low tear strength and is thin in order to achieve desired prosthesis softness and mobility. For this reason, the envelope may be easily cut or ruptured by excessive stresses, manipulation with blunt instruments or penetration by scalpel or needle. Care must be exercised during implantation to prevent such events.
 
 
 15
 The gel interior of these products is sufficiently vulcanized to minimize the migration of gel should a rupture occur in the silicone envelope. However, should the silicone envelope be ruptured, Heyer-Schulte cannot guarantee reliable containment and recommends that the prosthesis be replaced.
 
 
 16
 Lee asserts that the foregoing warning refers solely to the risk of rupture at the time of surgical implantation, and does not adequately warn of the risk of rupture resulting from the degradation or deterioration of the prosthesis over time. Despite these arguments, the district court concluded that the foregoing warning was sufficient as a matter of law, citing Weinberger v. Bristol-Meyers Co., 652 F.Supp. 187 (D.Md.1986). In Weinberger, the court determined that a warning is legally adequate if it explains the risk which allegedly caused the plaintiff's injury. Id. at 190 (applying Maryland law). Under the "learned intermediary doctrine," moreover, a manufacturer of a medical product need only inform the treating physician and not the patient of the known risks associated with a product. See Brooks v. Medtronic, Inc., 750 F.2d 1227, 1231 (4th Cir.1984); Weinberger, 652 F.Supp. at 189-90; Fellows v. USV Pharmaceutical Corp., 502 F.Supp. 297, 299 (D.Md.1980). The rationale for this rule is that a doctor serves as an informed intermediary and a conduit of information between his patients and the providers of medical products.
 
 
 17
 In the present case, the product insert sheet provided by Heyer-Schulte was adequate at law to warn Dr. Teimourian of the risk of rupture and leakage after a prosthesis is implanted. The warning specifically stated that while "[t]he gel interior of these products is sufficiently vulcanized to minimize the migration of gel should a rupture occur in the silicone envelope ... Heyer-Schulte cannot guarantee reliable containment and recommends that the prosthesis be replaced." The terms "migration," "containment" and "replaced" all presuppose that a rupture could occur while the prosthesis is implanted. "Migration" refers to the gradual movement of the silicone material comprising the implant to the surrounding breast tissue. "Containment" refers to any restriction of or impediment to that "migration." Finally, the term "replaced" carries with it a fundamental premise or precondition that there already has been performed an insertion or an original placement. As stated by the district court, "[t]his caution clearly addresses a risk that could only arise after implantation since the silicone cannot migrate unless it is in the patient's body. Likewise, the recommendation to replace the prosthesis makes sense only as a reference to an implanted prosthesis." Thus, the plain meaning of these terms supports the district court's conclusion that Heyer-Schulte considered the possibility that the implants might rupture after being implanted, and that its product notice adequately warned physicians of the danger.
 
 
 18
 Finally, Baxter provides one additional argument to support its assertion that the Heyer-Schulte warning was legally sufficient. Baxter contends that Dr. Teimourian did not convey any of the information contained in the Heyer-Schulte notice or any other medical warnings about breast prostheses to Lee prior to her implant surgery. Indeed, Lee testified at her deposition that she would not have consented to breast augmentation had she been aware of the dangers of rupture or leakage. Thus, Baxter maintains that Lee cannot now complain about a warning which her learned intermediary failed to give her, and claim that the notice is inadequate as a matter of law. We agree. For all of these reasons, it appears that Lee has failed to establish another essential element of proof in her prima facie case of products liability.
 
 VI.
 
 19
 Because Lee has failed to establish two critical elements of her products liability claim against Baxter, the grant of summary judgment below is hereby affirmed. We conclude that this appeal was not wholly without merit, however, and consequently decline to award costs and fees as requested by Baxter. For these reasons, the judgment of the district court is
 
 
 20
 AFFIRMED.