930 F.2d 913
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Paul LAURENZANO, Plaintiff-Appellant,
v.
BROWNING, Defendant-Appellee.
 No. 90-1434.
 United States Court of Appeals, Fourth Circuit.
 Argued March 4, 1991.
Decided April 19, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, District Judge. (CA-88-3925-JFM)
 Steven Joseph Parrott, Hartman & Crain, Annapolis, Md. (Argued), for appellant; John S. Simcox, Hartman & Crain, Annapolis, Md., on brief.
 Michael Thomas Wharton, Wharton, Levin & Ehrmantraut, Annapolis, Md. (Argued), for appellee; William M. Griffin, III, Friday, Eldridge & Clark, Little Rock, Ark., on brief.
 D.Md.
 AFFIRMED.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and W. EARL BRITT, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Paul Laurenzano brings this appeal challenging two rulings made by the district court during trial of his products liability action. For the reasons stated below, we affirm.
 
 I.
 
 2
 In March 1987, Laurenzano--then a 21-year-old student--purchased by mail a WASP WP6A 50-pound recurve archery bow manufactured by Browning. The bow was accompanied by an owner's manual which included instructions on how to string the bow. The manual indicated that three methods can be employed to string a bow: 1) the step-through method, 2) the push-pull method, and 3) using a bow stringer. The manual strongly recommended the use of a bow stringer, which was not included with the bow, but was marketed as an accessory. The manual stated that if the user could not obtain a bow stringer, the push-pull method should be used, and depicted in detail how to employ this method.
 
 
 3
 When Laurenzano first received the bow, he read the assembly instructions in the manual and then assembled the bow. Next, he read the manual completely, noting the language regarding the bow stringer. He called Bow Hunter's warehouse, but they had no bow stringers in stock. He then traveled to a few local sporting goods stores, but could not find a bow stringer. Laurenzano therefore decided to, and did, string the bow using the push-pull method. He strung and unstrung the bow using that method several times a day the following days in order to acquire proficiency.
 
 
 4
 On 2 April 1987, Laurenzano had a dinner party for five friends. Following dinner, the guests congregated in the living room while Laurenzano cleared the table and washed the dishes. At about 9:00 p.m., Laurenzano took out the bow and showed it to his friends. He taught one of them how to string it using the pushpull method, and then the friend strung it. Then, as Laurenzano tried to unstring the bow, his hand slipped and the bow tip struck him in the eye. As a result, his eye had to be removed.
 
 
 5
 Laurenzano's complaint was premised on theories of strict liability, negligence, and breach of the implied warranty of merchantability. His two central contentions at trial were that defendant should have included a bow stringer with the bow and that the instructions in the manual regarding the push-pull method were defective. At the close of Laurenzano's evidence, Browning moved for a directed verdict on all claims. The court granted the motion with respect to negligence and implied warranty, and left the strict liability issue for the jury, which returned a verdict in favor of Browning. Laurenzano now appeals, contending that the district court erred in directing a verdict on his negligence claim and in refusing to strike evidence of industry custom and practice once the negligence claim was removed from the case.[1]
 
 II.
 
 6
 In granting a directed verdict for Browning on Laurenzano's negligence claim, the district court relied on established precedent of this court which permits the district court, in its discretion, to subsume a negligence claim into a strict liability claim.[2] In Singleton v. International Harvester Co., 685 F.2d 112 (4th Cir.1981), plaintiff appealed the district court's refusal to submit a failure-to-warn count to the jury on both a negligence and strict liability standard. Plaintiff argued that "had the court submitted the case to the jury on a negligence standard, the jury would have focused on the reasonableness of the manufacturer's action rather than the defective condition of the product." Id. at 117. We found no merit in plaintiff's argument:
 
 
 7
 The sole difference between liability for negligence and strict tort liability is that the plaintiff in proving negligence must prove not only that there was a failure to warn that the product was unreasonably dangerous but also that the failure to warn was the result of the defendant's failure to exercise due care. We agree with [the district court] that if the plaintiffs were unable to convince the jury on strict liability they will necessarily be unable to convince them on the more demanding negligence standard. In this case ... the strict liability and the negligence instruction are functional equivalents and the failure to give the more demanding negligence instruction is not error.
 
 Id. (emphasis added).[3]
 
 8
 Laurenzano attempts to distinguish Singleton, arguing that the thrust of plaintiffs' evidence in that case was that the product--a tractor--was defectively designed. Plaintiffs there asserted negligence based on the inference arising from the fact that the product was defective. In this case, Laurenzano argues, he attempted to prove Browning's negligence with evidence wholly distinct from the product itself in that 1) the author of the manual lacked any training in bow stringing; 2) Browning failed to test the stringing method depicted in the manual; 3) Browning failed to even consider including a bow stringer with the bow; and 4) Browning failed to consider the availability of bow stringers in the market. Thus, Laurenzano argues, the considerations at play here are different from those at play in Singleton, and it was therefore an abuse of discretion for the district court to "fuse" the negligence instruction into the strict liability instruction.
 
 
 9
 Laurenzano's argument is somewhat disingenuous, for it implies that the jury can reach a verdict in his favor by focusing on the manufacturer's conduct instead of--rather than n addition to--the defectiveness of the product. As a legal proposition, this is incorrect, for a plaintiff pursuing a products liability claim on a negligence theory must prove that the product was defective at the time it left the manufacturer. Undeck v. Consumer's Discount Supermarket, Inc., 29 Md.App. 444, 455, 349 A.2d 635, 641-42 (1975); Chestnut v. Ford Motor Co., 445 F.2d 967, 968-69 (4th Cir.1971). Thus, even in a negligence claim, the jury must focus directly on the purported product defects to determine if there is negligence liability. Indeed, Laurenzano's allegations of Browning's negligent conduct are inextricably linked to his two allegations of product defects: 1) that the manual was defective in its portrayal of the push-pull method and 2) that the bow was defective because it did not come with a bow stringer--the very two issues which the district court did submit to the jury on the less rigorous strict liability standard. The jury rejected these allegations with respect to Laurenzano's strict liability claim; it is inconceivable that they would have accepted these allegations if they were also required to focus on Browning's reasonableness in designing and testing its product.
 
 III.
 
 10
 When the district court directed a verdict on the negligence claim, Laurenzano moved to strike all evidence regarding industry custom and practice as irrelevant to the surviving strict liability claim.[4] The district court denied the motion. Laurenzano relies on Banks v. Iron Hustler Corp., 59 Md.App. 408, 475 A.2d 1243, 1253 (1984), for the proposition that a manufacturer's compliance with industry standards, e.g., written guidelines of a trade or safety organization, is irrelevant in a strict liability case. From that proposition, Laurenzano extrapolates that industry custom and practice are also irrelevant.
 
 
 11
 Assuming, arguendo, that Laurenzano's position is correct, the district court's refusal to strike such evidence was not prejudicial error. It must be remembered that it was Laurenzano who chose to proceed on both negligence and strict liability theories, thereby ensuring that evidence relating to industry custom and practice would be presented in relation to the negligence claim. Obviously Laurenzano did not consider such evidence to be of significant prejudice to his case, or else he never would have proceeded on a negligence theory in the first place. Moreover, the vigor with which he contended at trial, and argues now, that the negligence claim was improperly excluded further underscores his conclusion that this evidence would not have prevented the jury from arriving at a verdict in his favor. The district court's refusal to strike evidence of industry custom and practice was therefore not "inconsistent with substantial justice" and did not affect Laurenzano's "substantial rights." Fed.R.Civ.P. 61. Thus, if the district court committed error, such error was harmless.
 
 IV.
 
 12
 For the foregoing reasons, the judgment of the district court is
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Plaintiff does not appeal the directed verdict on his breach of warranty claim
 
 
 [2]
 The district court's ruling was also motivated by its finding of insufficient evidence in the record to establish the appropriate standard of care in the bow manufacturing industry. We need not address the propriety of this basis for the district court's decision because we find that the district court properly exercised its discretion in granting a directed verdict on procedural grounds. For the same reason, we find no need to address Browning's argument that the ruling could be upheld by finding Laurenzano contributorily negligent as a matter of law
 
 
 [3]
 Prior to Singleton, in Chestnut v. Ford Motor Co., 445 F.2d 967 (4th Cir.1971), we held that the trial court in a products liability case has significant discretion in deciding whether to submit a negligence claim to the jury. We noted that regardless of whether the case is submitted on a claim of strict liability, breach of warranty, or negligence, the essential item of proof is that the product was unreasonably dangerous at the time it left the manufacturer. Id. at 968. We therefore held that the district court did not err in submitting only the breach of warranty claim to the jury. Id. at 969
 
 
 [4]
 Laurenzano concedes that such evidence was relevant to his negligence claim, but contends that once that claim was directed out of the case, the evidence was no longer relevant for any purpose