JONATHAN KEITH EVANS, Plaintiff v. JOSEPH S. EVANS and HAROLD KEITH EVANS, d/b/a EVANS FARMS, WESTERN OIL FIELD SUPPLY COMPANY, d/b/a LAKE COMPANY, CUSTOM STAMPING & MFG. CO., BROCK TRACTOR & EQUIPMENT CO., INC., and LEE TRACTOR CO., INC., d/b/a LEE TRACTOR OF ROCKY MOUNT, Defendants

No. COA01-1022

(Filed 17 September 2002)

**1. Products Liability— failure to warn—directed verdict**

The trial court did not err in a products liability case arising from injuries sustained from an alleged defective clamp used on an irrigation system by granting a directed verdict for defendant manufacturer on the issue of failure to warn, because plaintiff failed to proffer any evidence that defendant's failure to provide the warnings was the proximate cause of plaintiff's injuries.

---

2. **Products Liability; Warranties— breach of implied warranty of merchantability—directed verdict**

The trial court did not err in a products liability case arising from injuries sustained from an alleged defective clamp used on an irrigation system by granting a directed verdict for defendant manufacturer on the issue of breach of implied warranty of merchantability, because: (1) plaintiff's evidence did not eliminate other possible causes of the accident and provided no basis for an inference that such an accident would not occur absent a manufacturing defect; and (2) there were no facts tending to show that a defect existed when the clamp left the manufacturer.

3. **Products Liability— requested instruction—duty regarding design**

The trial court did not err in a products liability case arising from injuries sustained from an alleged defective clamp used on an irrigation system by failing to give plaintiff's requested instruction on defendant manufacturer's duty to exercise reasonable care regarding the design of the clamp and instead instructing that a manufacturer is under a duty to make reasonable efforts to correct design defects about which it knows or should have known, because: (1) N.C.G.S. § 99B-6(a) does not impose a duty of design on the manufacturer, and plaintiff failed to proffer evidence that defendant was in fact the designer of the clamp as well as the manufacturer of the clamp; and (2) although a witness's testimony may show that the clamp's designer acted unreasonably in the design, it does not show that defendant was the clamp's designer.

Judge GREENE concurring in the result.

Appeal by plaintiff from judgment and order entered 17 May 2001 by Judge Cy A. Grant, Sr., in Nash County Superior Court. Heard in the Court of Appeals 14 May 2002.

*Gibbons, Cozart, Jones, Hughes, Sallenger & Taylor, by W. Earl Taylor, Jr. and Andrew J. Whitley, for plaintiff-appellant.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Donald F. Lively, for defendant-appellee Custom Stamping & Mfg. Co.*

HUDSON, Judge.

Jonathan Keith Evans ("plaintiff") appeals a judgment entered in favor of Custom Stamping and Manufacturing Company, Incorporated ("Custom"), and an order denying his motion for a new trial. For the reasons given below, we affirm.

Plaintiff was injured when a clamp failed on an irrigation system while he was working for Evans Farms, a farming business owned by his father and uncle. Some part of the irrigation assembly, or possibly water at high pressure, struck plaintiff in the face, causing serious, permanent injuries, including blindness in both eyes. Neither plaintiff's father nor his uncle, who were both working nearby when the accident occurred, saw what happened. Plaintiff does not remember anything about the incident.

Plaintiff filed a complaint against Evans Farms and Western Oil Field Supply, d/b/a Lake Company ("Lake Company"). Plaintiff later amended his complaint to add additional defendants, of which Custom is one. Custom manufactured the clamp at issue for Lake Company, which was the clamp's retailer. Prior to trial, plaintiff's claims against all defendants except Custom were either dismissed or settled, and the case proceeded to trial only against Custom.

Plaintiff's claims against Custom included failure to give adequate warnings; breach of implied warranty of merchantability; and negligence in the design of the clamp. Dr. Anand David Kasbekar testified for plaintiff as an expert witness in the field of mechanical engineering and material science and in the field of failure analysis of metallic components. He testified that, due to its construction, the clamp deformed with use, as a result of which the clamp could appear to be securely closed but then "flop open." Dr. Kasbekar opined that the deformation of the clamp occurred as a result of being closed around a part that was slightly too big or around parts that were not properly aligned. Additional testimony of relevance here was that of David Stout, the president of Custom, who testified to the nature of Custom's business. We discuss the testimony in further detail below.

At the close of all the evidence, Custom moved for directed verdict, and the trial court granted Custom's motion on the issues of failure to give adequate warnings and breach of implied warranty of merchantability. The trial court did not give the specific instruction that plaintiff requested on the duty of a manufacturer with respect to

design. The jury returned a verdict finding that plaintiff was not injured by the negligence of Custom. Plaintiff moved for a new trial. The trial court entered judgment in favor of Custom and denied plaintiff's motion for a new trial. Plaintiff now appeals.

In his first two assignments of error, plaintiff contends that the trial court erred by granting directed verdicts for Custom on plaintiff's claims for failure to provide adequate warnings and breach of implied warranty of merchantability. "On appeal from a directed verdict, this Court must determine whether there is substantial evidence of each essential element of a plaintiff's claim." *Horack v. Southern Real Estate Co. of Charlotte, Inc.*, 150 N.C. App. 305, 314, 563 S.E.2d 47, 53 (2002). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). On a motion for a directed verdict at the close of all evidence, "the trial court must determine whether the evidence, when considered in the light most favorable to the nonmovant, is sufficient to take the case to the jury." *Southern Bell Tel. & Tel. Co. v. West*, 100 N.C. App. 668, 670, 397 S.E.2d 765, 766 (1990), *aff'd*, 328 N.C. 566, 402 S.E.2d 409 (1991). "The court should deny a motion for directed verdict when there is more than a scintilla to support plaintiffs' prima facie case. Where the question of granting a directed verdict is a close one, the better practice is for the trial judge to reserve his decision on the motion and submit the case to the jury." *Edwards v. West*, 128 N.C. App. 570, 573, 495 S.E.2d 920, 923 (citation omitted), *cert. denied*, 348 N.C. 282, 501 S.E.2d 918 (1998).

[1] The General Assembly has created special proof requirements in a cause of action for the failure to give an adequate warning in a product liability case:

>     (a) No manufacturer or seller of a product shall be held liable in any product liability action for a claim based upon inadequate warning or instruction unless the claimant proves that the manufacturer or seller acted unreasonably in failing to provide such warning or instruction, that the failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought, and also proves one of the following:

>     (1) At the time the product left the control of the manufacturer or seller, the product, without an adequate warning or instruction, created an unreasonably dangerous condition that the manufacturer or seller knew, or in the exercise of ordinary

care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant.

(2) After the product left the control of the manufacturer or seller, the manufacturer or seller became aware of or in the exercise of ordinary care should have known that the product posed a substantial risk of harm to a reasonably foreseeable user or consumer and failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action under the circumstances.

N.C. Gen. Stat. § 99B-5(a) (2001). Plaintiff argues that the testimony of Dr. Kasbekar regarding warnings was sufficient to address these requirements and send the claim to the jury. Dr. Kasbekar testified as follows regarding warnings:

A. There should be some warning on this clamp, some warning to indicate to the user the severity of the hazard should it fail, and also a warning to tell the user when the clamp is worn and should be discarded, if that's the manufacturer's position that these will wear out and should be discarded at some point.

Obviously there's not enough room on this clamp to have a lot of specific instructions, at least not big enough that someone could read them. So the practice I would suggest would be to warn of the severity of the hazard, which, in my opinion, would be severe or fatal injury, at least with a high pressure irrigation system, and to instruct the user to either contact the manufacturer or refer him to a booklet provided by the manufacturer to let him know how the clamp should be applied, how to inspect the clamp properly if that needs to be done to prevent this type of situation.

I think the other witness had testified that if he knew that the clamp was doing this (illustrating) that he wouldn't have used it. But if these are sitting in an open position on your truck and you go to grab one and you place it around an object and either do the—

. . . .

—either due to misalignment of the hasp or misalignment of the fittings or a fitting that's a couple tenths of an inch bigger than it should be, you go to close it and it closes in a secure manner, then you have no idea that that clamp is actually loose. If you are

EVANS v. EVANS

[153 N.C. App. 54 (2002)]

instructed that before you apply this clamp you should always join it together and line up the hasp and turn it upside down to make sure that it's functioning properly, that would probably eliminate that.

Additionally, Dr. Kasbekar testified that

if it is the manufacturer's intent for this clamp only to be used with components supplied by the manufacturer or certain brands of components, then I think that should be stated somewhere on the clamp because what I learned, talking with other experts in the area and doing some research on my own, is that there are six inch irrigation fittings and there's actually six inch fittings that are slightly smaller and some that are slightly bigger.

And, in fact, one of the clamps that we were provided with turns out to have a quarter inch smaller diameter than the subject clamp although it's still called a six inch clamp. And when you've got things that may vary by a quarter of an inch but it takes less than a quarter of an inch to totally deform the clamp so it's no longer useable, you've got a potential problem.

Assuming without deciding that there was sufficient evidence to create a jury question on whether Custom acted unreasonably in failing to provide these warnings, plaintiff proffered no evidence that Custom's failure to provide the warnings was the proximate cause of plaintiff's injuries. Therefore, we conclude that plaintiff failed to provide "substantial evidence of each essential element of [his] claim." *Horack*, 150 N.C. App. at 314, 563 S.E.2d at 53. Accordingly, the trial court did not err by directing a verdict for Custom on this claim.

[2] Plaintiff also argues that the trial court erred by directing a verdict for Custom on the issue of whether Custom breached the implied warranty of merchantability. The Uniform Commercial Code, as adopted in North Carolina, provides:

(1) Unless excluded or modified (G.S. 25-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

N.C. Gen. Stat. § 25-2-314 (2001). This Court has stated that

an action for breach of implied warranty of merchantability under G.S. § 25-2-314 (and all other analogous state enactions of U.C.C. 2-314) entitles a plaintiff to recover without any proof of negligence on a defendant's part where it is shown that (1) a merchant sold goods, (2) the goods were not "merchantable" at the time of sale, (3) the plaintiff (or his property) was injured by such goods, (4) the defect or other condition amounting to a breach of the implied warranty of merchantability proximately caused the injury, and (5) the plaintiff so injured gave timely notice to the seller.

*Reid v. Eckerds Drugs, Inc.*, 40 N.C. App. 476, 480, 253 S.E.2d 344, 347, *disc. review denied*, 297 N.C. 612, 257 S.E.2d 219 (1979).

The North Carolina Supreme Court has recently clarified how a plaintiff may present a *prima facie* case for the jury on breach of an implied warranty of merchantability, when the evidence is circumstantial. *Dewitt v. Eveready Battery Co., Inc.*, 355 N.C. 672, 565 S.E.2d 140 (2002). The Court noted the following:

In some cases, the plaintiff may be able to prove that the product suffered from a specific defect by producing expert testimony to explain to the jury precisely how the product was defective and how the defect must have arisen from the manufacturer or seller. In cases of a manufacturing defect, such expert testimony is certainly desirable from the plaintiff's perspective, but it is not essential. The plaintiff, even without expert testimony articulating the specific defect, may be able to convince a

jury that the product was defective when it left the seller's hands by producing circumstantial evidence. Such circumstantial evidence includes (1) the malfunction of the product; (2) expert testimony as to a variety of *possible* causes; (3) the timing of the malfunction in relation to when the plaintiff first obtained the product; (4) similar accidents involving the same product; (5) elimination of other possible causes of the accident; and (6) proof tending to establish that the accident does not occur absent a manufacturing defect.

*Id.* at 687-88, 565 S.E.2d at 149-50 (emphasis by the Court) (citation omitted).

Plaintiff argues that the clamp was "being used for its intended purposes in a normal way," when it failed, and therefore it must not have been "fit for the ordinary purposes for which such goods are used." N.C.G.S. § 25-2-314(2). Although we do not believe that the plaintiff must produce evidence of every factor mentioned in *Dewitt*, we believe that we may refer to these factors if they help us to determine whether the plaintiff's circumstantial evidence as a whole satisfies the requirements of the statute. Applying the factors in *Dewitt* here, we conclude otherwise.

Joseph Stevens Evans, plaintiff's father, testified that the clamp involved here had been in use in the farm's irrigation system for two or three years. Plaintiff presented no evidence that this clamp was manufactured any differently from the other clamps Custom manufactured. David Stout, Custom's president, testified that since 1972, Custom has made approximately 300,000 clamps per year similar to the one at issue here. Prior to plaintiff's accident, Stout had never received any complaints from his customers about defects in the clamps. Dr. Ronald Sneed, plaintiff's expert witness in the field of agricultural engineering, acknowledged on cross-examination that the clamp did not violate any industry custom or standard that he knew about, and that it would pass in the irrigation industry as a merchantable clamp.

However, plaintiff's evidence did not eliminate other possible causes of the accident, and provided no basis for an inference that such an accident would not occur absent a manufacturing defect. Reviewing the plaintiff's evidence as a whole, and by reference to the *Dewitt* factors, we conclude that even if the evidence tended to establish the first two factors, it did not support an inference of any of the last four, or of any other fact tending to show a defect existed when

the clamp left the manufacturer. Thus, we conclude that plaintiff failed to produce "substantial evidence of each essential element of [his] claim," in that his evidence does not tend to establish a defect at the time of sale. *Horack,* 150 N.C. App. at 314, 563 S.E.2d at 53. Accordingly, the trial court did not err by directing a verdict for Custom on this claim.

**[3]** In his third and final assignment of error, plaintiff contends that the trial court erred by refusing to give his requested instruction on Custom's duty regarding the design of the clamp. Our legislature has provided that:

> No manufacturer of a product shall be held liable in any product liability action for the inadequate design or formulation of the product *unless the claimant proves that* at the time of its manufacture *the manufacturer acted unreasonably in designing* or formulating the product, that this conduct was a proximate cause of the harm for which damages are sought, and also proves one of the following:
>
> > (1) At the time the product left the control of the manufacturer, the manufacturer unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product.
> >
> > (2) At the time the product left the control of the manufacturer, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design.

N.C. Gen. Stat. § 99B-6(a) (2001) (emphasis added).

Plaintiff requested the following instruction:

> A manufacturer of a product, such as a ring lock clamp, is under a duty to those who use its product to use reasonable care in the manufacture and inspection of the product so as to not subject a person to injury from a latent defect. A manufacturer is also under a duty to those who use its product to exercise that degree of care in its:

(1)  design of the product;

(2)  manufacture of the product;

(3)  selection of materials;

(4)  assembly process; and

(5)  inspection of the product

that a reasonable and prudent person would use under the same or similar circumstances to protect others from injury.

A manufacturer's failure to use reasonable care is negligence.

The court gave the following instruction:

Now, members of the jury, a manufacturer of a product such as a ring lock clamp, is under a duty to those who use its product to use reasonable care in the manufacture and inspection of the product so as not to subject a person to injury from a latent defect. A manufacturer is also under a duty to those who use its product to exercise that degree of care in its manufacture of the product, selection of materials, assembly process, and inspection of the product, that a reasonable and prudent person would use under the same or similar circumstances to protect others from injury. A manufacturer's failure to use reasonable care is negligence.

A manufacturer is also under a duty to make reasonable efforts to correct design defects about which it knows or should have known.

Thus, the trial court omitted plaintiff's requested instruction that a manufacturer is under a duty to exercise reasonable care in the design of a product, instructing instead that a manufacturer is under a duty to make reasonable efforts to correct design defects about which it knows or should have known. Our Supreme Court has explained:

When charging the jury in a civil case it is the duty of the trial court to explain the law and to apply it to the evidence on the substantial issues of the action. If a party contends that certain acts or omissions constitute a claim for relief or a defense against another, the trial court must submit the issue with appropriate instructions if there is evidence which, when viewed in the light most favorable to the proponent, will sup-

port a reasonable inference of each essential element of the claim or defense asserted.

*Cockrell v. Cromartie Transport Co.*, 295 N.C. 444, 449, 245 S.E.2d 497, 500 (1978) (citations omitted). Plaintiff argues that the court's version of the instruction was inadequate because the jury may have understood this instruction to impose on Custom only a duty to correct a design defect after it is discovered, rather than a duty to design the clamp correctly in the first instance. Plaintiff's assertion, however, is not supported by law, as N.C.G.S. § 99B-6(a) does not impose a duty of design on the manufacturer. Rather, *if* the manufacturer designs the product, then it has a duty to use reasonable care in the design. Plaintiff did not proffer evidence to show that Custom was in fact the designer of the clamp, as well as the manufacturer, of the clamp. In fact, the evidence adduced at trial tends to show that Custom did not design the clamp.

Plaintiff argues that Dr. Kasbekar's testimony constituted evidence in support of the instruction he requested regarding the design of the clamp. In particular, Dr. Kasbekar testified that the clamp was "underdesigned." He testified that "if the clamp had been properly designed and constructed such that you didn't end up with this condition (illustrating), then, more likely than not the clamp would have held the two pieces together and this accident wouldn't have happened." Dr. Kasbekar explained that, due to the materials used in the parts of the clamp, the latch plate could become deformed, which caused, in part, the clamp to become loose. Additionally, other parts of the clamp were subject to wear and deformation. Finally, the clamp became loose because the spring stretched and elongated. Dr. Kasbekar testified that, in his opinion, this happened because the spring was not strong enough. Once the clamp is deformed, Dr. Kasbekar explained, "after it's clamped it will simply flop open." Dr. Kasbekar testified to his opinion that the spring and latch plate were not "strong enough to prevent permanent deformation or stretching of the two materials, either the spring indenting the latch plate or the spring itself stretching. A different type of material would probably prevent that, or a larger diameter spring may also prevent that." Dr. Kasbekar testified further that, in his opinion, the clamp should have contained a secondary locking device so that, if the spring mechanism failed, the clamp could not open; plaintiff's uncle attached such a device to the clamps after the accident.

This evidence may show that the clamp's designer acted unreasonably in the design. It does not show, however, that Custom was the

clamp's designer. Dr. Kasbekar testified that the selection of material was part of the design of the clamp. David Stout, Custom's president, testified as follows:

Q. Tell the jury what your contract was with Lake Company for making these clamps.

A. Our contract was to make clamps that looked like the clamp that they showed us, subject to the alterations that they requested.

Q. All right. Who decided what kind of metal to make the clamps out of?

A. Lake Company did.

Q. Who decided what kind of metal to make the latch plate and the bale spring out of?

A. Lake Company.

Q. Did they come in and give you specifications for it, or a sample, or what?

A. They gave us a sample of the ring lock and said we want you to do this the same way.

Q. So, on what basis did you decide what materials to buy to make the clamp out of?

A. We got the same materials that were incorporated in the other clamp.

Stout testified further that his company was approached by other irrigation equipment manufacturers. These other manufacturers "[said] basically the same thing the Lake Company did. 'We want a ring lock like the Western ring lock, only we need a little bit different configuration or diameter of the band itself . . . .' They all wanted the same locking mechanism." Stout testified that all the manufacturers wanted the clamp to be manufactured from the same materials as used in the Lake Company clamp. He emphasized that "We don't do design." Additionally, Stout testified as follows:

Q. How many of [the manufacturers] asked you to put a secondary locking device like the one that Steve Evans designed?

A. None.

Q. What would you have done if they had asked you to put on a secondary locking device like the one that Steve Evans' [sic] designed?

A. If they'd specked it out, I would have quoted it.

Q. And what would have been the result to you?

A. It would be like getting another job; we would be paid for that.

Stout's testimony indicates that Custom did not design the clamp and that Custom did not select the material from which the clamp was made. Custom merely followed the specifications given to it by Lake Company. There was no evidence presented to contradict this testimony, nor any evidence to suggest that Custom was the designer of the clamp. In fact, plaintiff's counsel asked Stout on cross examination if he knew who had designed the clamp, and Stout identified "an engineer who worked for Western Irrigation in the late '60s" as the one who "came up with the original design."

We conclude that there is no evidence to show that Custom designed the clamp. Accordingly, the law and evidence do not support the instruction that plaintiff requested, and it was not error for the trial court to refuse to give the instruction.

In summary, the superior court did not err by granting a directed verdict for Custom on the issues of failure to warn and breach of implied warranty of merchantability, or by failing to give plaintiff's requested design instruction. Accordingly, we affirm the judgment and the order denying plaintiff's motion for a new trial.

Affirmed.

Judge BIGGS concurs.

Judge GREENE concurs in the result with a separate opinion.

GREENE, Judge, concurring in the result.

I agree with the majority that the trial court properly granted Custom's motion for a directed verdict as to plaintiff's claims for failure to provide adequate warnings and breach of the implied warranty of merchantability but reach this conclusion using a different analysis.

*Failure to Warn*

Pursuant to N.C. Gen. Stat. § 99B-5(a), a defendant in a product liability action will not be held liable for inadequate warning or instruction unless the claimant shows: (1) "the manufacturer or seller acted unreasonably in failing to provide such warning or instruction," (2) "the failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought," and (3) either section 99B-5(a)(1) or 99B-5(a)(2) has been satisfied. N.C.G.S. § 99B-5(a) (2001). Section 99B-5(a)(1) applies where the manufacturer or seller becomes aware of the need to warn or instruct while the product is still in its control and provides:

> At the time the product left the control of the manufacturer or seller, the product, without an adequate warning or instruction, created an unreasonably dangerous condition that the manufacturer or seller knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant.

N.C.G.S. § 99B-5(a)(1) (2001). Section 99B-5(a)(2) deals with the scenario in which the manufacturer or seller only becomes aware of the need to warn or instruct after the product has left its control. *See* N.C.G.S. § 99B-5(a)(2) (2001). Under this section, the claimant must further prove that:

> [a]fter the product left the control of the manufacturer or seller, the manufacturer or seller became aware of or in the exercise of ordinary care should have known that the product posed a substantial risk of harm to a reasonably foreseeable user or consumer and failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action under the circumstances.

*Id.*

In this case, plaintiff presented no evidence that the clamp, when it left Custom's control, created an unreasonably dangerous condition that Custom "knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm" to plaintiff. *See* N.C.G.S. § 99B-5(a)(1). Furthermore, Custom's president testified that since it started producing clamps, Custom had not received any complaints from customers about its clamps prior to plaintiff's accident. Thus, there is no evidence under section 99B-5(a)(2) that after the clamp in question left Custom's control, Custom "became aware

of or in the exercise of ordinary care should have known that the product posed a substantial risk of harm" to plaintiff. As plaintiff failed to provide substantial evidence of the elements listed in either section 99B-5(a)(1) or (2), the trial court properly granted Custom's motion for a directed verdict on plaintiff's failure to warn claim. *Cobb v. Reitter* 105 N.C. App. 218, 220, 412 S.E.2d 110, 111 (1992) (standard of review on appeal from a directed verdict).

### Implied Warranty of Merchantability

I disagree with the majority's implication that a plaintiff seeking to show a breach of the implied warranty of merchantability must offer evidence as to each factor listed in *Dewitt v. Eveready Battery Co., Inc.* to survive a motion for a directed verdict. In order to establish a breach of the implied warranty of merchantability, a plaintiff must prove that: (1) the product bought and sold was subject to an implied warranty of merchantability; (2) the product did not comply with the warranty because it was defective at the time of sale; (3) the plaintiff's injury was due to the defective nature of the product; and (4) plaintiff suffered damages as a result. *Dewitt v. Eveready Battery Co., Inc.*, 355 N.C. 672, 683, 565 S.E.2d 140, 147 (2002). According to our Supreme Court, adequate circumstantial evidence of a defect at the time of sale

> *may* include such factors as: (1) the malfunction of the product; (2) expert testimony as to a possible cause or causes; (3) how soon the malfunction occurred after the plaintiff first obtained the product and other relevant history of the product . . . ; (4) similar incidents, " 'when[] accompanied by proof of substantially similar circumstances and reasonable proximity in time' "; (5) elimination of other possible causes of the accident; and (6) proof tending to establish that such an accident would not occur absent a manufacturing defect.

*Id.* at ——, 565 S.E.2d at 151 (citations omitted) (emphasis added). Our Supreme Court further held that "[t]he plaintiff does not have to satisfy all these factors to create a circumstantial case . . . , and if the trial court determines that the case may be submitted to the jury, ' "[i]n most cases, the weighing of these factors should be left to the finder of fact." ' " *Id.* (citation omitted). Accordingly, the fact plaintiff did not present evidence in this case relating to the last four factors outlined in *Dewitt v. Eveready* is not in and of itself determinative.

I nevertheless agree with the majority's decision to affirm the trial court's grant of a directed verdict as to plaintiff's implied warranty of merchantability claim because plaintiff failed to prove the existence of this warranty. The implied warranty of merchantability applies only to merchants. *See* N.C.G.S. § 25-2-314 (2001). Pursuant to N.C. Gen. Stat. § 25-2-104(1), a merchant is defined as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction." N.C.G.S. § 25-2-104(1) (2001).

According, to the testimony of Custom's president, "Custom . . . is a metal stamping job shop [with which] [m]anufacturers of equipment contract . . . to run parts on [Custom's] presses, parts they wish to out-source." It is the customer who provides Custom with the specifications for the requested products, which range from "parts that go into winch assemblies[,] . . . parts that go into hub assemblies for four-wheel drive vehicles[,] . . . components of exercise equipment [and] overhead door assemblies" to "cooling tubes for nuclear fuel rods." This evidence gives no indication that Custom "deal[t] in" clamps or otherwise "h[eld] [itself] out as having knowledge or skill peculiar to" the manufacture of clamps. Thus, Custom is not a merchant in respect to the manufacture of clamps, and no implied warranty of merchantability exists in this case. As such, the trial court properly granted Custom's motion for a directed verdict.