944 A.2d 1136

Mary Susan **CRICKENBERGER**

v.

**HYUNDAI MOTOR AMERICA.**

**No. 81, Sept. Term, 2007.**

Court of Appeals of Maryland.

March 21, 2008.

38

Hy David Rubenstein (Kimmel & Silverman, P.C., of Owings Mills), on brief, for appellant.

Steven R. Freeman (Brett R. Myerson of Freeman, Wolfe & Greenbaum, P.A. of Towson), on brief, for appellee.

Hugh F. Young, Jr., Product Liability Advisory Council, Inc., Reston, Va., Joel A. Dewey, Jeffrey M. Yeatman, Kelly M. Marzullo, DLA Piper US LLP, Baltimore, brief of Amicus Curiae Product Liability Advisory Council, Inc.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, WILNER, ALAN M. (Retired, specially assigned) CATHELL, DALE R. (Retired, specially assigned), JJ.

HARRELL, J.

## I.

This appeal arises from a lawsuit, over an automobile, brought in the Circuit Court for Howard County alleging breach of warranty under the Magnuson–Moss Warranty–Federal Trade Commission Improvement Act and violation of Maryland's Consumer Protection Act. On 20 November 2001, Mary Susan Crickenberger (Appellant) purchased from Antwerpen/Hyundai Kia ("Antwerpen") in Baltimore, Maryland, a 2001 Hyundai XG–300 with 8,911 miles on its odometer. A limited warranty accompanied the sale of the vehicle, stating an agreement to repair or replace any component displaying a defect in materials or workmanship. Prior to Ms. Crickenberger's purchase, the vehicle was part of the rental car fleet owned by the Hertz Corporation.

The record of this case does not indicate what, if any, maintenance the Hertz Corporation performed on the vehicle while in its ownership, or its repair record, or whether it was in any accidents. After Ms. Crickenberger acquired it, she claimed to have caused the car to be serviced for maintenance purposes on several occasions. She alleged that the Hyundai received oil service on 10 December 2001; 11 May, an unknown date in August, and 16 November 2002; 14 March, 24 September, and 1 November 2003; 24 February, 19 July, 12 November, and finally on 21 December 2004. The mileage at each of these respective intervals was 9,684; 16,251; unknown; 25,940; 31,206; 40,977; 42,760; 47,646; 54,862; 59,810; and 61,730.

Various components of the car were repaired or replaced during Ms. Crickenberger's ownership. In 2001, Antwerpen replaced the fuel pump seal. In 2002, the dealer replaced the battery and canister close valve. In 2003, Ms. Crickenberger was involved in an accident, as a consequence of which the dealer repaired the front fender and a headlamp. Also in 2003, she brought the vehicle to Antwerpen for repair of a loose windshield wiper connection. On 23 September 2003,

the dealer discovered sludge in the engine while investigating why the engine was knocking. In 2004, experiencing ongoing operating problems with the car, Ms. Crickenberger returned the vehicle to Antwerpen for replacement of an output speed sensor, the alternator (twice), generator (twice), battery, spark plug wires, mass air flow sensor, input speed sensor, oil filter gasket, and an airbag. On 4 February 2005, the vehicle, with an odometer reading then of 63,700 miles, stopped working altogether. The dealer advised Ms. Crickenberger that the engine would have to be replaced. Through its authorized dealer, Antwerpen, Hyundai Motor America (Appellee, hereinafter "HM A") declined to replace the engine under the limited warranty.

Crickenberger initiated this case in the Circuit Court on 23 January 2003, alleging that the vehicle's continued need for repair established defects in the vehicle and that HMA's failure to cure the defects resulted in a breach of the Maryland Consumer Protection Act (Maryland Code (1975, 2000 Repl.Vol.), Commercial Law Article, §§ 13–101 to 13–501) and the Magnuson–M oss Warranty–Federal Trade Commission Improvement Act (15 U.S.C. §§ 2301 to 2312 (2000), hereinafter the "Magnuson–Moss Act"). As the foundation of her Magnuson–Moss Act claims, she alleged breach of express and implied warranties under Maryland Code (1975, 2002 Repl.Vol.), Commercial Law Article, §§ 2–313[1] and

---

**1.** § 2–313. Express warranties by affirmation, promise, description, sample

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he

2–314,[2] pursuant to § 2310(d)(1)[3] of the Magnuson–Moss Act. The Consumer Protection Act count derived from an alleged

---

have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

2. § 2–314. Implied warranty; merchantability; usage of trade

 (1) Unless excluded or modified (§ 2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale. Notwithstanding any other provisions of this title

 (a) In §§ 2–314 through 2–318 of this title, "seller" includes the manufacturer, distributor, dealer, wholesaler or other middleman or the retailer; and

 (b) Any previous requirement of privity is abolished as between the buyer and the seller in any action brought by the buyer.

 (2) Goods to be merchantable must be at least such as

 (a) Pass without objection in the trade under the contract description; and

 (b) In the case of fungible goods, are of fair average quality within the description; and

 (c) Are fit for the ordinary purposes for which such goods are used; and

 (d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

 (e) Are adequately contained, packaged, and labeled as the agreement may require; and

 (f) Conform to the promises or affirmations of fact made on the container or label if any.

 (3) Unless excluded or modified (§ 2–316) other implied warranties may arise from course of dealing or usage of trade.

 (4) Subsections (1) and (2) of this section apply to a lease of goods and a bailment for hire of goods that pass through the physical possession of and are maintained by the lessor, sublessor, or bailor.

3. "[A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply ... under a written warranty [or] implied warranty ... may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any State or the District of Columbia...." 15 U.S.C. § 2310(d)(1).

 Subject to requirements regarding attempts at informal dispute resolution, the Act establishes that a consumer alleging a breach of either a full or limited warranty may commence a civil action. 15 U.S.C. § 2310. If a consumer prevails in the civil action, he or she is entitled to attorney's fees, regardless of whether the warranty was full or limited. *Id.* For a detailed discussion of informal dispute resolution

violation of the Maryland Automotive Warranty Enforcement Act (Maryland Code (1975, 2000 Repl.Vol.), Commercial Law Article, § 14–1501 to 14–1504) because, as plead, a violation of the latter also was a violation of the former.

In discovery, Ms. Crickenberger designated an expert, James E. Lewis, and indicated that he would testify at trial as to the Hyundai's repair history and loss in value as a result of the alleged defects. HMA filed a motion *in limine* to exclude Lewis's opinions on the grounds that they lacked an adequate factual basis, were unreliable, and constituted inadmissible speculation in violation of Maryland's requirements for the admissibility of expert witness testimony. Prior to the hearing on HMA's motion *in limine,* Crickenberger withdrew her designation of Mr. Lewis as her expert. No other expert witness was advanced by her on the issues of causation or damages.

HMA filed a Motion for Summary Judgment asserting that Crickenberger could not prevail on her breach of warranty (Magnuson–Moss Act) claims because, without expert testimony, she could not prove the existence of a defect attributable to the manufacturer at the time of sale, HMA's failure to correct alleged defects in violation of warranty, or the amount of damages caused by a defect. HMA also argued that Ms. Crickenberger could not prevail on her Maryland Consumer Protection Act claim as it was derivative of a violation of the Automotive Warranty Enforcement Act, which was inapplicable because the Hyundai was owned previously at the time she purchased it. As to her Consumer Protection Act count, Crickenberger did not contest its inapplicability and conceded as much. As to HMA's Motion concerning the Magnuson–Moss Act, she filed an opposition alleging that proof of a violation of the Act does not require expert testimony or proof of a specific defect. The Circuit Court, after a hearing, granted HMA's motion, finding that expert testimony would

under the Magnuson–Moss Act, see *Koons Ford of Baltimore, Inc. v. Lobach,* 398 Md. 38, 919 A.2d 722.2d 722 (2007).

be required to prove causation and damages before Ms. Crickenberger could recover under the Act. Because no such expert was identified, the court determined HMA was entitled to judgment as a matter of law.

Crickenberger appealed to the Court of Special Appeals. In her brief filed in the intermediate appellate court, she framed three arguments: (1) in breach of limited or implied warranty claims under the Magnuson–Moss Act, expert testimony is not required to prove a product contained a defect existing at the time of sale; (2) a consumer does not bear the burden of proving a specific defect to prevail on breach of limited or implied warranty claims under the Act; and (3) expert testimony is unnecessary to prove damages under the Act. We issued a writ of certiorari, on our own initiative, while the appeal was pending before that court. *Crickenberger v. Hyundai*, 402 Md. 36, 935 A.2d 406 (2007).

### III.

Ms. Crickenberger offers two principal arguments to support her main thesis that expert testimony is unnecessary in order to link her Hyundai's malfunctions with a defect in the vehicle attributable to the manufacturer. First, she argues that, under the Magnuson–Moss Act, a consumer need not prove a specific defect to prevail, even if the derivative state law would require such proof. Second, she argues that Maryland law does not require expert testimony where, as here, the particular product required so many repairs. Crickenberger asserts that the alleged circumstantial evidence of a defect (her record of service and repairs in this case) sufficiently raised triable questions of fact as to causation and defect. Where circumstantial evidence is relied on, she concludes, expert testimony "is one of the factors, but not the only factor, to be considered in determining whether a defect may be inferred...." In other words, the record of repairs she proposed to submit as evidence is circumstantial evidence of a breach of a limited or implied warranty sufficient, standing alone, to raise triable questions of fact under the Magnuson–Moss Act and Maryland law.

**A.**

We review the trial court's grant of HMA's Motion for Summary Judgment *de novo* as to the law and in a light most favorable to Ms. Crickenberger, the non-moving party. *Hill v. Cross Country Settlements, LLC,* 402 Md. 281, 294, 936 A.2d 343, 350–51 (2007). "Summary judgment is appropriate where 'there is no genuine dispute as to any material fact' and 'the party in whose favor judgment is entered is entitled to judgment as a matter of law.'" *Id.* (quoting Maryland Rule 2–501(f)). "[T]he mere existence of a scintilla of evidence in support of the plaintiffs' claim is insufficient to preclude the grant of summary judgment; there must be evidence upon which the jury could reasonably find for the plaintiff." *Beatty v. Trailmaster Prods., Inc.,* 330 Md. 726, 738–39, 625 A.2d 1005, 1011 (1993) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)). "[W]hile a court must resolve all inferences in favor of the party opposing summary judgment, 'those inferences must be reasonable ones.'" *Beatty,* 330 Md. at 739, 625 A.2d at 1011 (1993) (quoting *Clea v. City of Balt.,* 312 Md. 662, 678, 541 A.2d 1303, 1310 (1988)).

**B.**

In 1975, Congress enacted the Magnuson–Moss Act to improve the "clarity, truth, and strength of consumer product warranties." 1 DAVID G. OWEN ET AL., MADDEN AND OWEN ON PRODUCTS LIABILITY 3d. § 4.23 (2000) (hereinafter MADDEN AND OWEN). Sellers who issue warranties or provide service contracts for consumer products, such as vehicles, are under certain obligations standardized by the Federal Law. *Id.* Written warranties must be labeled "full" or "limited," and terms of the warranty must be "fully, conspicuously, and clearly disclosed" in order to prevent deception. *Id.;* 15 U.S.C. §§ 2302, 2303. Additionally, the Act prohibits manufacturers from disclaiming implied warranties on consumer products, such as vehicles, in their entirety when a full warranty is

supplied and for the duration of a limited warranty. MADDEN AND OWEN § 4:23; 15 U.S.C. §§ 2304, 2308.

Though little discussed in reported Maryland cases, it is well established that the Magnuson–Moss Act supplements State law with regard to its limited and implied warranty provisions. *Champion Ford Sales, Inc. v. Levine*, 49 Md.App. 547, 563, 433 A.2d 1218, 1227 (1981) ("The Act ... permits recovery of attorneys' fees by a consumer who prevails in an action against the seller for breach of an implied warranty under state law...."); *Hood v. Ryobi N.A., Inc.*, 17 F.Supp.2d 448, 450 (D.Md.1998) (describing plaintiff's express and implied warranty claims under state law and its "derivative" claim under the Magnuson–Moss Act); 2 BARKLEYCLARK & CHRISTOPHER SMITH, THE LAW OF PRODUCT WARRANTIES § 14:1 (1984) ("The Warranty Act does not provide a complete body of law for private actions; it supplements rather than supplants state warranty actions."). As Ms. Crickenberger admits "[c]laims made pursuant to the Magnuson–Moss Warranty Act ... are substantively state law claims under breach of warranty provisions of the Maryland Commercial Law...."

The Act defines warranties first by categorizing them as "implied warranties" or "written warranties." An "implied warranty" is defined, for purposes of the Act, as "an implied warranty under state law." 15 U.S.C. § 2301. As mentioned earlier, for implied warranties, the Act uniformly sets duration and disclaimer restrictions supplemental to state law requirements.

"Written warranty" is defined in the Magnuson–Moss Act as:

any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other

remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6). Written warranties are divided into full warranties and limited warranties. 15 U.S.C. § 2303(a). A "full warranty" must be labeled as such and meet minimum standards outlined by the Act.[4] *Id.* §§ 2303, 2304. A "limited warranty," on the other hand, is defined by what it lacks; it is a warranty that does not meet the minimum requirements for a "full warranty" under the Act. *Id.* § 2303. Accordingly, limited warrantors are not subject to the Magnuson–Moss Act's full warranty minimum requirement that a "warrantor must as a minimum remedy [a] consumer product within a reasonable time and without charge, in the case of a defect, malfunction, or failure to conform with such warranty." *Id.*

---

**4.** To meet the minimum federal standards, a full warranty warrants, under 15 U.S.C. § 2304, that:

(1) such warrantor must as a minimum remedy such consumer product within a reasonable time and without charge, in the case of a defect, malfunction, or failure to conform with such written warranty;

(2) notwithstanding section 2308(b) of this title, such warrantor may not impose any limitation on the duration of any implied (continued . . .) warranty on the product;

(3) such warrantor may not exclude or limit consequential damages for breach of any written or implied warranty on such product, unless such exclusion or limitation conspicuously appears on the face of the warranty; and

(4) if the product (or a component part thereof) contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product or part (as the case may be). The Commission may by rule specify for purposes of this paragraph, what constitutes a reasonable number of attempts to remedy particular kinds of defects or malfunctions under different circumstances. If the warrantor replaces a component part of a consumer product, such replacement shall include installing the part in the product without charge.

## C.

Ms. Crickenberger, relying on the full warranty minimum requirement, alleges that a majority of courts have held that a consumer does not bear the burden of proving a specific defect to prevail on a breach of limited or implied warranty action, regardless of whether a specific defect must be proved in order to prevail under state law. She offers no Maryland case in support of the contention that the Magnuson–Moss Act does not require proof of a specific defect in order to show a breach of an implied or limited warranty. The out-of-state cases offered to us by Ms. Crickenberger as persuasive, however, are easily distinguishable. Three of those cases, *Mason v. Porsche Cars of North America, Inc.*, 688 So.2d 361 (Fla. 5th Dist.Ct.App.1997); *Universal Motors, Inc. v. Waldock*, 719 P.2d 254 (Alaska 1986); and *Cline v. DaimlerChrysler Co.*, 114 P.3d 468 (Okla.Civ.App.2005), rely on the minimum standard requirements for a *full warranty* in 15 U.S.C. § 2304. *Mason*, 688 So.2d at 366–67 ("Porsche's warranty conformed to [section 2304]." (quoting 15 U.S.C. § 2304)); *Waldock*, 719 P.2d at 256 ("The relevant section of the Magnuson–Moss Act [is] 15 U.S.C. § 2304." ... (quoting 15 U.S.C. § 2304)); *Cline*, 114 P.3d at 477 ("The Alaska court noted the specific language of 15 U.S.C. § 2304(c) 'places the burden of proving owner abuse squarely on the warrantor.'" (quoting *Waldock*, 719 P.2d at 256)). Inasmuch as these cases apply full warranty requirements to limited warranties, in dissonance with state law, we decline to follow them.

The other cases Crickenberger cites, *Osburn v. Bendix Home Sys., Inc.*, 613 P.2d 445 (Okla.1980); *Genetti v. Caterpillar, Inc.*, 261 Neb. 98, 621 N.W.2d 529 (2001); and *Vernon v. Lake Motors*, 26 Utah 2d 269, 488 P.2d 302 (1971), support the notion that direct evidence is not required when there is sufficient circumstantial evidence to support an inference that a defect exists attributable to the manufacturer. *Osburn*, 613 P.2d at 448 ("Identification of an existing defect is not essential to recovery upon express warranty. It is sufficient if, as here, the evidence shows, either directly or by permissible inference, that the goods were defective in their performance

or function or that they otherwise failed to conform to the warranty."); *Genetti,* 621 N.W.2d at 542 ("Although expert testimony pointing to a specific defect would be the best means of proving the existence of a defect in some cases, proof that the warranted product is defective may be circumstantial in nature and may be inferred from the evidence."); *Vernon,* 488 P.2d at 306 ("[C]ircumstantial evidence is adequate as proof if its quality is such that the jury believes that the greater probability of truth lies therein."). These holdings, however, do not support the proposition that the Magnuson–Moss Act lowers the burden of proof a plaintiff must bear to establish a breach of a limited or implied warranty. Furthermore, these cases are entirely consistent with Maryland law (discussed *infra*).

### D.

The burden Crickenberger carries to establish a breach of an implied or limited warranty in Maryland is well established. In *Hacker v. Shofer,* 251 Md. 672, 676–77, 248 A.2d 351, 354 (1968), this Court declared, "[i]t is undoubtedly the settled law that to recover on an express warranty the burden of proof is on the plaintiff to establish that the article sold did not at the time of the sale conform to the representations of the warranty. This rule of law applies with equal force to an implied warranty." In *Ford Motor Co. v. General Accident Insurance Co.,* 365 Md. 321, 334, 779 A.2d 362, 370 (2001), we declared, " 'to allow the jury to decide whether there was a breach of warranty, there must be some evidence beyond mere speculation which would enable the jury to rationally decide it is more probable than not that the defect existed at the time of sale . . . .' " (quoting *Giant Food, Inc. v. Wash. Coca–Cola Bottling Co., Inc.,* 273 Md. 592, 608–09, 332 A.2d 1, 10 (1975)).[5] Stated another way, the plaintiff in a

---

**5.** The burden on the plaintiff was established conclusively in *Ford Motor Co. v. General Accident Insurance Co.,* 365 Md. 321, 779 A.2d 362 (2001). In that case, a 1995 Ford F–350 base chassis cab truck, converted to a tow truck (as was customary with these vehicles), caught

breach of warranty claim must establish "three product litigation basics": the existence of a defect, attribution of the defect to the seller, and a causal relationship between the defect and plaintiff's damages. *Gen. Accident Ins. Co.,* 365 Md. at 335, 779 A.2d at 370 (citing *Harrison v. Bill Cairns Pontiac,* 77 Md.App. 41, 50, 549 A.2d 385, 390 (1988)).

The nature and circumstances of an accident or malfunction may support an inference of a defect attributable to the manufacturer of the product "where circumstantial evidence tends to eliminate other causes, such as product misuse or alteration." *Gen. Accident Ins. Co.,* 365 Md. at 337, 779 A.2d at 371 (quoting *Harrison,* 77 Md.App. at 51, 549 A.2d at 390). For example, it is beyond cavil that when a *new* vehicle malfunctions, a reasonable inference of a defect may be drawn from the circumstances. *See Phipps v. Gen. Motors Corp.,* 278 Md. 337, 345–46, 363 A.2d 955, 959 (1976) ("[T]he steering mechanism of a new automobile should not cause the car to swerve off the road . . .; the drive shaft of a new automobile should not separate from the vehicle when it is driven in a normal manner . . .; the brakes of a new automobile should not suddenly fail . . .; and the accelerator of a new automobile should not stick without warning, causing the

---

fire during an attempted tow. *Id.* at 323, 779 A.2d at 362. An expert testified at trial that the fire was caused by a defect in the vehicle. *Id.* at 328, 779 A.2d at 366. General Accident Insurance Co. (General Accident) argued that Ford Motor Co. (Ford) breached express and implied warranties due to the alleged defect. *Id.* at 323, 779 A.2d at 362. When the trial court entered judgment in favor of Ford on all claims, General Accident appealed. *Id.* at 329–30, 779 A.2d at 367. As to the express warranty offered by Ford, which provided protection against "parts . . . that are defective in factory-supplied materials or workmanship," the intermediate appellate court affirmed the trial court, noting that to succeed on the claim, General Accident had to prove the alleged defect. *Int'l Motors, Inc. v. Ford Motor Co.,* 133 Md.App. 269, 275, 754 A.2d 1115, 1118 (2000), *rev'd on other grounds by sub nom. Gen. Accident Ins. Co.,* 365 Md. 321, 779 A.2d 362. As to the implied warranty claims, this Court conclusively affirmed the trial court, finding that "a plaintiff must prove the existence of a defect at the time the product leaves the manufacturer to recover on an implied warranty claim." *Gen. Accident Ins. Co.,* 365 Md. at 334, 779 A.2d at 369.

vehicle suddenly to accelerate. Conditions like these, even if resulting from the design of the products, are defective and unreasonably dangerous...." (Internal citations omitted)).

Ms. Crickenberger principally relies on *Virgil v. Kash N' Karry Service Corp.*, 61 Md.App. 23, 484 A.2d 652 (1984), to support her contention that expert testimony is not necessary in the present case to show that her Hyundai malfunctioned because it was defective at the time it left HMA's control. In that case, the Virgils (plaintiffs) sued two corporations for breach of warranty because a thermos imploded. *Virgil*, 61 Md.App. at 27, 484 A.2d at 654. The Circuit Court for Howard County entered a directed verdict in favor of the defendants for the reason that the plaintiffs proffered no evidence that the thermos was defective when purchased. *Id.* at 28, 484 A.2d at 654. The Court of Special Appeals reversed. *Id.* at 28, 484 A.2d at 654–55. The court noted "[a]n inference of a defect may be drawn from the happening of an accident, where circumstantial evidence tends to eliminate other causes, such as product misuse or alteration." *Id.* at 32, 484 A.2d at 657 (citing 51 A.L.R.3d § 2[b] ). The court held that "Mrs. Virgil's testimony, if believed by the trier of fact, tended to eliminate any likelihood that the defect that caused the implosion was created after Mrs. Virgil purchased the thermos." *Virgil*, 61 Md.App. at 33, 484 A.2d at 657. The court excused Mrs. Virgil from supplying expert testimony to establish an inference that the thermos was defective at the time it left the manufacturer's control, noting that such evidence is necessary only when the subject of the inference "is beyond the ken of the average layman." *Id.* at 31, 484 A.2d at 656. The court also found, in light of Mrs. Virgil's testimony, that a two or three month interval between the time of purchase and the implosion, although a factor to be considered, did not bar the possibility of recovery as a matter of law. *Id.*

*Virgil* contrasts nicely with *Harrison*, 77 Md.App. 41, 549 A.2d 385, where the plaintiffs alleged a breach of warranty due to a product defect in a five-year old vehicle with over 58,000 miles on its odometer. The trial court in *Harrison*

granted summary judgment to the manufacturer-defendant. *Harrison*, 77 Md.App. at 43, 549 A.2d at 386. The Court of Special Appeals affirmed, finding, in part, that a product defect in the well-used vehicle may not be inferred based on evidence of a malfunction (an electrical short) and expert testimony that the fire normally would not result in the absence of a product defect. *Id.* at 51–53, 549 A.2d at 390–91. The court noted, " 'proof of a defect must arise above surmise, conjecture, or speculation . . .; and one's right to recovery may not rest on any presumption from the happening of an accident.' " *Id.* (quoting *Jensen v. Am. Motors Corp.*, 50 Md.App. 226, 232, 437 A.2d 242, 245 (1981)).

 The facts alleged by Crickenberger, even viewed in a light most favorable to her, are more analogous to those in *Harrison* than to *Virgil.* As in *Harrison,* Ms. Crickenberger's Hyundai was neither new, nor temporally near-to-new, when its engine ceased running (at 63,700 driven miles) or during the times of her ownership when electrical problems were experienced. Ms. Crickenberger's proffered testimony did not tend to eliminate the likelihood that the vehicle's malfunction was caused by circumstances not in the control of HMA. Although *Virgil* may support the premise that expert testimony is unnecessary if the average layman might discern a defect from lay circumstantial evidence, the record here does not tend to establish a particular defect. The repairs and replacements Ms. Crickenberger's Hyundai required ran a gamut of problems and occurred over several years and thousands of miles. She failed to marshal any potential evidence as to the state of care of the vehicle by the Hertz Corporation prior to her purchase. Also, in proffering service records for the vehicle, Ms. Crickenberger established that the engine oil services she obtained were erratically obtained and failed generally to conform to HMA's frequency of oil change recommendations. Moreover, the vehicle was involved in an accident while in her possession. This evidence does not tend "to eliminate any likelihood that the defect that caused [the Hyundai to malfunction] was created after [the vehicle

left HMA's control]." *Virgil,* 61 Md.App. at 33, 484 A.2d at 657.

## IV.

Ms. Crickenberger did not generate a genuine issue of material fact. The MagnusonMoss Act requires no less than Maryland Law in order to establish a breach of a limited or implied warranty as to a consumer product. Under Maryland law, she failed to present sufficient circumstantial evidence tending to create an inference that her Hyundai malfunctioned as a result of a defect existing at the time it left HMA's control. Without expert testimony, Ms. Crickenberger's allegations of a defect in this case amount to "mere speculation." As such, the trial court properly granted HMA's motion for summary judgment. *Gen. Accident Ins. Co.,* 365 Md. at 334, 779 A.2d at 370 ("[T]o allow the jury to decide whether there was a breach of warranty, there must be some evidence beyond mere speculation which would enable the jury to rationally decide it is more probable than not that the defect existed at the time of sale . . . ." (internal citations omitted)). Given this conclusion, it is unnecessary to reach and decide whether expert testimony would have been required also in this case to establish her alleged damages.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

MURPHY, J., Concurs.

Concurring Opinion by MURPHY, J.

I agree that, on the facts of the case at bar, "the trial court properly granted HMA's motion for summary judgment." I am persuaded that there are two reasons why Mrs. Crickenberger needed expert testimony to generate a jury question on the issue of whether HMA was in breach of warranty: (1) "[t]he record of this case does not indicate what, if any, maintenance the Hertz Corporation performed on the vehicle while in its ownership, or its repair record, or whether it was

in any accidents[,]" and (2) "in proffering service records for the vehicle, Ms. Crickenberger established that the engine oil services she obtained were erratically obtained and failed generally to conform to HMA's frequency of oil change recommendations." Under these circumstances, expert testimony was necessary "to create an inference that her Hyundai malfunctioned as a result of a defect existing at the time it left HMA's control." I write separately, however, out of concern that the majority opinion will be cited as authority for the incorrect propositions that—in *every* breach of warranty action—the defendant is entitled to summary judgment unless the plaintiff produces expert testimony on the issues of (1) whether the product was defective, and (2) the precise nature of the defect.

To resolve the issue of when expert testimony is needed in a warranty action, it may be helpful to hypothesize an implied warranty action asserted against an automobile manufacturer by a plaintiff who testifies that, "I bought the car new, it's still under warranty, it hasn't been involved in a fire, it hasn't been involved in a flood, it hasn't been stolen or broken into, I have complied with all of the manufacturer's maintenance recommendations, I have made no modifications to the car, but it won't go more than 15 miles per hour." Must this plaintiff produce expert testimony to generate a jury question on the issue of whether the manufacturer is in breach of warranty? I am persuaded that, under Maryland law, the answer to this question is "no."

I agree with the majority that, under *Phipps v. Gen. Motors Corp.*, 278 Md. 337, 363 A.2d 955 (1976), "it is beyond cavil that when a *new* vehicle malfunctions, a reasonable inference of a defect may be drawn from the circumstances." In *Phipps,* while answering two questions of law certified by the United States District Court for the District of Maryland as a result of warranty and strict liability claims asserted in that court as a result of an accident that allegedly occurred when the accelerator of a Pontiac "became stuck without warning, causing the automobile to accelerate suddenly at a high rate of speed and leave the road," this Court stated:

> For example, the steering mechanism of a new automobile should not cause the car to swerve off the road, *Henningsen v. Bloomfield Motors, Inc., supra*[32 N.J. 358, 161 A.2d 69 (1960)]; the drive shaft of a new automobile should not separate from the vehicle when it is driven in a normal manner, *Elmore v. American Motors, Corporation,* 70 Cal.2d 578, 75 Cal.Rptr. 652, 451 P.2d 84, 33 A.L.R.3d 406 (1969); the brakes of a new automobile should not suddenly fail, *Sharp v. Chrysler Corporation,* 432 S.W.2d 131 (Tex. Civ.App.1968); and the accelerator of a new automobile should not stick without warning, causing the vehicle suddenly to accelerate.

*Id.* at 345–46, 363 A.2d at 959. The same conclusions should be applicable to not-so-new automobiles that have been (1) properly used, (2) properly maintained, (3) not modified, and (4) not involved in an event that might reasonably explain the malfunction.

In a breach of warranty action asserted by a plaintiff/owner whose no longer "new" car has malfunctioned while still under warranty, the plaintiff can generate a jury question on the issue of whether the manufacturer is in breach of the warranty by producing evidence that the car (1) has been maintained in compliance with the manufacturer's maintenance recommendations, (2) has not been subjected to abnormal use, (3) has not been modified, and (4) has not been involved in any event that might reasonably explain the malfunction. The first element of proof is required by the majority opinion in the case at bar. The other elements of proof are required by *Ford v. General Accident,* 365 Md. 321, 779 A.2d 362 (2001), in which this Court reinstated a judgment entered in favor of the manufacturer of a chassis cab that (1) was sold to a purchaser who converted the cab into a tow truck, and (2) caught fire while being used as a tow truck, on the ground that "[t]he Court of Special Appeals improperly shifted the plaintiff's burden of proof onto the manufacturer to demonstrate that the event causing injury or property damage was not caused by any defect that originated with the manufacturer." *Id.* at 333, 779 A.2d at 369. If all four elements of proof are satisfied,

the plaintiff has produced evidence that would permit a reasonable inference of a defect to be drawn from the circumstances, and therefore judgment should not be entered against the plaintiff on the ground that the plaintiff has failed to produce expert testimony.

As to the issue of whether the plaintiff must produce evidence identifying the specific flaw that caused the product to be defective, in *Eaton Corp. v. Wright,* 281 Md. 80, 375 A.2d 1122 (1977), while reinstating a circuit court judgment entered in favor of the distributor of a fuel canister that exploded while in the process of being attached to a propane torch, this Court rejected the distributor's argument that "the plaintiffs [who asserted strict liability and breach of implied warranty claims] have failed to establish the exact nature of the defect and are therefore precluded from recovery." *Id.* at 88, 375 A.2d at 1126. In that case, the plaintiffs did present expert testimony, but this Court made it clear that they were not *required* to do so.[1] Writing for a unanimous Court, Judge Eldridge stated:

> The plaintiffs in this case, by their own testimony, presented sufficient evidence to support the judgments in their favor based on the theory of strict liability. Their testimony shows that the canister was used within one hour of purchase, without any unusual handling or alterations, and according to the instructions on the label. A standard torch head, which the canister was designed to accept, was used in conjunction with the canister. When the torch head was removed from the canister, as recommended by the manufacturer, highly flammable gas continued to be released from the canister. **There can be little doubt that a propane canister, used immediately after purchase ac-**

---

1. Other cases that have also come to this conclusion include: *Spain v. Brown & Williamson Tobacco Corp.,* 872 So.2d 101, 111 (Ala.2003); *Evans v. Evans,* 153 N.C.App. 54, 569 S.E.2d 303, 307 (2002); *DeWitt v. Eveready Battery Co., Inc.,* 355 N.C. 672, 565 S.E.2d 140, 151 (2002); *Alvarez v. American Isuzu Motors,* 321 Ill.App.3d 696, 255 Ill.Dec. 236, 749 N.E.2d 16, 23 (2001); *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 444–45 (Tex.1989).

cording to instructions on the label, which continues to allow gas to be released after an appliance has been removed, is defective and unreasonably dangerous. Under circumstances such as these, the plaintiffs presented a prima facie case. There was no necessity for them to show more concerning the precise nature of the defect. *See Phipps v. General Motors Corp., supra,* 278 Md. at 345–346, 363 A.2d 955; *Giant Food, Inc. v. Wash. Coca–Cola,* 273 Md. 592, 609, 332 A.2d 1 (1975); Powell and Hill, *Proof of a Defect or Defectiveness,* 5 U.Balt.L.Rev. 77, 89–90 (1975).

\* \* \*

Also, we think that it could be reasonably inferred from these facts that the canister was in the defective condition and unreasonably dangerous when sold by [the distributor] to the retailer.... As previously pointed out, the testimony of the plaintiffs themselves supported an inference of no consumer misuse.

*Id.* at 89–90, 375 A.2d at 1127 (emphasis supplied).

I recognize that in *Ford v. General Accident, supra,* this Court also stated:

The Court of Special Appeals erred in holding that proof of a specific product defect is not required to maintain a claim for breach of the implied warranty of merchantability. This Court long has held that a plaintiff asserting a breach of the implied warranty of merchantability must prove that the product was defective.

*Id.* at 333, 779 A.2d at 369. In an implied warranty action arising out of the malfunction of an automobile (that swerved off the road, that had a drive shaft that separated from the vehicle, that had an accelerator that stuck without warning, that caught fire and is no longer operable) the "product" is the automobile rather than the component of the automobile that has caused the malfunction. Therefore, the second of the above quoted sentences is correct. A careless reading of the first quoted sentence, however, would suggest that *Eaton Corp. v. Wright* has been overruled and a warranty plaintiff must now

prove "the precise nature of the defect." For this reason, it is important to emphasize that, because "specific product defect" is not synonymous with "precise nature of the defect," *Ford v. General Accident* did not overrule *Eaton Corp. v. Wright.*

In the above hypothetical, the "specific product defect" is the fact that the car "won't go faster than 15 miles per hour," a condition that renders the car unfit for the ordinary purposes for which a car is used. This defect can be established by the testimony of the plaintiff, who would be entitled to the following jury instruction:

When products are sold, there is an implied warranty, or a promise that the products are fit for ordinary purposes for which such products are used.

In order to find in favor of the Plaintiff on his claim that the defendant breached its implied warranty of merchantability, you must find by a preponderance of the evidence that (1) the defect about which the Plaintiff complains—that his car cannot go faster than 15 miles per hour—is a defect that made the car unfit for the ordinary purpose for which a car is used; and (2) this defect existed when it left the Defendant's control. You may find that the defect existed when it left the Defendant's control if you are persuaded that the defect is not the result of abnormal use or another independent cause.

In an implied warranty of merchantability action based upon product defect, the plaintiff need not prove the precise nature of the defect, or any specific act of negligence on the part of the Defendant, as the focus is not on the conduct of the manufacturer, but upon the product itself.

The first paragraph of this instruction is adapted from MPJI–Cv 26:7. The second paragraph is adapted from Illinois Pattern Jury Instruction, Civil No. 185.05 (2007), the Comment to which makes it expressly clear that the "Plaintiff may prove that the product was defective and that the defect existed when it left defendant's control either through expert testimony or by excluding abnormal use and reasonable secondary causes for the problems with the product." The third

paragraph is adapted from MPJI–Cv 26:11 and *Eaton Corp. v. Wright, supra.*

Although MPJI–Cv 26:11 was drafted for use in "Strict Liability In Tort" actions, this instruction can be modified for use in warranty actions because a breach of implied warranty of merchantability action against a manufacturer is the functional equivalent of a strict liability action,[2] the only essential difference being that (1) in a strict liability action, the plaintiff must prove that the defect in the product renders the product "unreasonably dangerous," while (2) in an implied warranty of merchantability action, the plaintiff must prove that the defect in the product renders the product "unfit for the ordinary purposes for which the product is used." In either of these actions, however, the plaintiff is not required to present expert testimony on the "precise nature of the defect."

---

**2.** This observation has been expressly stated in the following cases: *Haglund v. Philip Morris Inc.*, 446 Mass. 741, 847 N.E.2d 315, 321–22 (2006); *Alvarez v. American Isuzu Motors*, 321 Ill.App.3d 696, 255 Ill.Dec. 236, 749 N.E.2d 16, 23 n. 2 (2001); *Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 664–66 (Tex.1999); *Wainwright v. Washington Metropolitan Area Transit Authority*, 903 F.Supp. 133, 140 (D.D.C.1995); *Basko v. Sterling Drug, Inc.*, 416 F.2d 417, 427 (2d Cir.1969); *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121, 126 (9th Cir.1968).